ALBERT KEEFE *vs.* DANIEL J. HART & another.

Suffolk. November 26, 1912. — January 29, 1913.

Present: RUGG, C. J., HAMMOND, BRALEY, SHELDON, & DE COURCY, JJ.

*Arrest. False Imprisonment. Officer. Police.*

When a police officer has arrested a person without a warrant upon probable cause to believe that such person has committed a felony, it is his duty to bring the prisoner before a court or magistrate as soon as reasonably is possible, and he has no right to detain the prisoner for the purpose of making a further investigation of the charge against him.

Where an officer, after arresting a person without a warrant upon reasonable cause to believe that he had committed a felony, is satisfied that his suspicions were unfounded, he is not required to make a formal complaint under oath, but does his duty by bringing the prisoner before the proper magistrate and laying before that magistrate a full statement of the facts.

In an action against a police officer for alleged false imprisonment in detaining the plaintiff in custody for an unreasonable time without bringing him before a magistrate after having arrested him upon probable cause to believe that he had committed a felony, where the facts in regard to the circumstances of the detention are not agreed, it cannot be ruled as matter of law that a delay of an hour and a quarter was reasonable.

TORT, against two police officers of the city of Boston, for the alleged unlawful arrest and false imprisonment of the plaintiff on April 7, 1908. Writ in the Municipal Court of the City of Boston dated July 21, 1908.

On appeal to the Superior Court the case was tried before *Fox*, J.

---

* A witness called by the plaintiff.

The plaintiff testified that he had resided for a long time in Cambridge and for about twenty-five years had been engaged in the produce business in Boston, and that he at times made a business of buying and selling railroad tickets. He also testified in substance as follows: On April 7, 1908, the plaintiff had in his possession a certain railroad ticket which he took to the office of one Colpitts on Washington Street, Boston. After some conversation with him, Colpitts took the ticket to the office of the Grand Trunk Railway on Washington Street and in a little while returned saying that the manager of the Grand Trunk Railway wanted to see the plaintiff. The plaintiff then went to the office of the Grand Trunk Railway, saw the manager, one Boynton, and had some talk with him. The defendant Hart then came into the office, had some talk privately with Boynton, and then approached the plaintiff, told him that Boynton suspected that the railroad ticket in question was a stolen ticket, and asked the plaintiff where he got it. The plaintiff replied that he had bought the ticket that morning from a pawnbroker named Rudinsky on Merrimac Street, Boston. The plaintiff told the defendant that he did not know the street number of Rudinsky's place but described it as well as he could. The defendant Hart then asked the plaintiff to accompany him to Merrimac Street, and the plaintiff replied that he would do so if he was not under arrest but that he would not go with the defendant if under arrest, and said, "Let's settle this right now. Am I under arrest or not?" The defendant then said, "You are under arrest, come with me," and placed his hand upon the plaintiff's arm, led the plaintiff from the office, then along Washington Street to School Street, through School Street and into Court Square to Police Station No. 2. At the police station the plaintiff was led by the defendant Hart to the desk where the defendant O'Neil was sitting. At the direction of the defendant O'Neil, the plaintiff was searched, his money, keys, railroad ticket, etc., were taken from him, and his description was entered in a book by the defendant O'Neil, who also recorded in the book that the plaintiff was arrested on the charge of being a "suspicious person." The defendant O'Neil then ordered the defendant Hart to put the plaintiff in a cell, and the defendant Hart led the plaintiff to a cell, locked him in and left him. About an hour and a quarter later the defendant Hart came back again to the door of the cell,

opened it and said, "Come out, Keefe. You can go." The plaintiff asked, "Am I to be taken before the court?" and Hart replied, "No. Get to hell out of this." The plaintiff then went out of the cell, to the desk where his personal property, including the railroad ticket in question, was handed to him. The defendant Hart asked him to sign some book which he refused to do, and then the plaintiff went out of the police station. The plaintiff further testified that he was not taken before any court, nor, so far as he knew, was any complaint against him made to any court.

Boynton, called as a witness by the defendants, testified that he was manager for the Grand Trunk Railway, with an office on Washington Street, Boston. Colpitts called at his office on April 7, 1908, with a railroad ticket. The witness asked Colpitts to send the owner of the ticket in, and in a few minutes afterwards the plaintiff came. The witness also telephoned to the police, and the defendant Hart came. He told the defendant Hart that a railroad ticket office at Santa Monica had been broken into, that the ticket in the possession of the plaintiff was stamped Santa Monica and that he believed the ticket was one of the stolen tickets, but that he was not sure. The defendant Hart then approached the plaintiff and asked him where he got the ticket. The plaintiff told him that he purchased the ticket at a pawnbroker's somewhere on Merrimac Street. Hart then asked the plaintiff to go with him to Merrimac Street, and the plaintiff replied that he would not go unless he was under arrest. The defendant Hart then placed the plaintiff under arrest and took him out of the office. The witness Boynton further testified that later on the same day he wrote a letter to the head office of the Grand Trunk Railway, and that only when he received an answer to that letter several days later did he know whether or not the ticket was a stolen one.

The defendant Hart, a police officer for the city of Boston, testified that on the day in question he was called to the office of the Grand Trunk Railway, and there saw Boynton and the plaintiff. Boynton showed him a circular, and told him that he had received notice that the ticket office at Santa Monica had been broken into, entered, and a large number of tickets and the stamp had been stolen. The ticket in question bore the stamp "Santa Monica," and Boynton further told him the ticket was a stolen

ticket. He then asked the plaintiff where he got the ticket, and the plaintiff said that he got it in a pawnshop on Merrimac Street, that he did not know the name of the man who sold it to him, and that he had bought tickets of the man before. He then asked the plaintiff to accompany him there to find out about it, and the plaintiff said he would not go unless under arrest. The defendant Hart then placed the plaintiff under arrest, and told him that he was charged with having stolen property in his possession, knowing it to have been stolen, and walked with him to the station house where the defendant O'Neil, a sergeant of police in the police department for the city of Boston, was the officer in charge. Hart testified that Boynton accompanied them to the station, that he told the defendant O'Neil that the plaintiff was under arrest on suspicion of having stolen property in his possession, that he explained to the defendant O'Neil about the ticket. He told the defendant O'Neil that a ticket office at Santa Monica had been broken into and tickets stolen from it, that the plaintiff said he had bought the ticket on Merrimac Street. O'Neil then said, "Why don't you take him down to Merrimac Street and find out about it?" Hart replied, "He has had a chance to do that, and refused." O'Neil then booked the plaintiff as a "suspicious person" and ordered that he be searched and locked in a cell. The defendant Hart then went alone to Merrimac Street to investigate Keefe's story, having some doubt as to its truth. He visited the pawnshop of Rudinsky on Merrimac Street. As a result of his investigation, being convinced of Keefe's innocence, he returned to the station house, and, after talking to the officer in charge at the time, told the plaintiff that he had investigated and found that the plaintiff "came into possession of the ticket all right," and released him from custody. He further testified that he did not tell the plaintiff at that time to "get to hell out of here."

The defendant O'Neil testified that he was at the time of the trial a lieutenant in the police department for the city of Boston, and at the time in question was a sergeant of police in that department in charge of the station house to which the plaintiff was brought. He testified that Hart said of the plaintiff when he brought the plaintiff to the station, "Here is a man that was down at the railway office on Washington Street, and he has a stolen

ticket in his possession." Boynton then came up and showed him a circular giving the numbers of a large number of tickets that he said had been stolen, and that the ticket the plaintiff had was one of the tickets. The defendant O'Neil then inquired of the plaintiff where he got the ticket, and the plaintiff said, "On Merrimac Street." The defendant O'Neil asked him from whom he got the ticket, and the plaintiff replied that he did not know. O'Neil then asked him what number Merrimac Street, and the plaintiff said he did not know. O'Neil then said to the plaintiff, "Why don't you go down with the officer and find out and verify your statements?" Hart then said, "I have asked him to go down there, and he refused, and I placed him under arrest." O'Neil then asked the plaintiff his name, age and residence, entered them in a book, and assigned the plaintiff to a cell. The defendant Hart took him to the cell. In his entry in the records the defendant O'Neil stated that the offense for which the plaintiff Keefe was held was "suspicious person." At that time O'Neil's mind was not made up on the question of the plaintiff's guilt and he ordered Hart to make an investigation. He further testified that where a person had been arrested on suspicion of having committed some offense he would book such a case as "suspicious person." The defendant O'Neil was not present and was not in charge of the station when the plaintiff was released. It nowhere appeared that any complaint in court was made against the plaintiff by either of the defendants, and it appeared that the plaintiff was released from the station house without being brought before any court.

The foregoing was all the evidence in the case material to the questions raised by the bill of exceptions.

At the request of the plaintiff the judge instructed the jury that, if the defendants arrested the plaintiff, the burden of proof was upon them to justify the arrest; that, if the defendants arrested the plaintiff upon suspicion, the burden of proof was upon the defendants to show that they had reasonable and probable cause to believe that the plaintiff had committed a felony; and that the defendants were not justified in arresting the plaintiff, if they merely had some suspicion that he might have committed a crime, and took him in custody until they could complete their investigation.

The plaintiff also asked the judge to make the following rulings:

"4. The duty of the defendants after arresting the plaintiff was to take him without unreasonable delay before some court of competent jurisdiction for examination. Failure so to do makes the defendants liable to the plaintiff in this action.

"5. The defendants as arresting officers had no right to delay taking their prisoner before the court, while they make an investigation of the truth of the plaintiff's statements.

"6. The defendants after arresting the plaintiff had no right to discharge him from arrest without having taken him before the court. Having done so, they are liable in this action for false imprisonment."

The judge refused to make any of the rulings above quoted and instead instructed the jury in substance as follows: "A criminal proceeding can only be begun by a complaint under oath. If an officer who arrests a person on suspicion, having probable cause to believe that he has committed a felony, satisfies himself by investigation that the prisoner is innocent, he is not obliged to go to court and swear out a false complaint. Therefore, an officer who arrests a person on suspicion having reasonable cause to believe him to have committed a felony is not liable for false imprisonment if he releases the prisoner without taking him before a court or beginning any criminal proceedings against him."

The jury returned a verdict for the defendants; and the plaintiff alleged exceptions to the refusals to rule and to the rulings above stated.

The case was submitted on briefs.

*A. M. Pinkham,* for the plaintiff.

*P. E. Coyle & L. A. Rogers,* for the defendants.

SHELDON, J. The defendants as policemen had the right to arrest the plaintiff without a warrant if they had reasonable grounds to suspect that he was guilty of a felony (*Commonwealth* v. *Phelps,* 209 Mass. 396, 404); and we now must take it that this issue has been settled in their favor by the verdict of the jury. But, having so arrested him, it was their duty to take him before a magistrate, who could determine whether or not there was ground to hold him. It was not for the arresting officers to settle that question. *Stetson* v. *Packer,* 7 Cush. 562. *Brock* v. *Stimson,* 108 Mass. 520. *Phillips* v. *Fadden,* 125 Mass. 198. *Clark* v. *Tilton,* 74 N. H. 330. *Douglass* v. *Barber,* 18 R. I. 459. *Pratt* v. *Hill,* 16 Barb. 303.

*Green* v. *Kennedy*, 46 Barb. 16. *State* v. *Parker*, 75 N. C. 249.
*Manning* v. *Mitchell*, 73 Ga. 660, 663. *Judson* v. *Reardon*, 16
Minn. 431. *Newby* v. *Gunn*, 74 Texas, 455, 456. *Samuel* v. *Payne*,
1 Doug. 359. *Wright* v. *Court*, 4 B. & C. 596. As to this, the doc-
trine of *M'Cloughan* v. *Clayton*, Holt, N. P. 478, though approved
in *Burke* v. *Bell*, 36 Maine, 317, has not been followed.

It is true that, if one so arrested consents to his release without
being taken before a magistrate, if he chooses to waive this re-
quirement of the law and to discharge his claim against the offi-
cer, he cannot afterwards complain of the omission. *Joyce* v.
*Parkhurst*, 150 Mass. 243. *Caffrey* v. *Drugan*, 144 Mass. 294.
*Bates* v. *Reynolds*, 195 Mass. 549. *Horgan* v. *Boston Elevated
Railway*, 208 Mass. 287. But this is the personal option of the
prisoner. The arresting officer is in no sense his guardian (*Phillips*
v. *Fadden*, 125 Mass. 198, 201), and can justify the arrest only by
bringing the prisoner before the proper court, that either the pris-
oner may be liberated or that further proceedings may be insti-
tuted against him. *Bath* v. *Metcalf*, 145 Mass. 274, 276.

The officer is not required to make a formal complaint under
oath if he has concluded that his suspicions were unfounded. He
does his duty by bringing his prisoner before the proper magis-
trate and laying before that magistrate a full statement of the
facts. He is not responsible for the action of the magistrate.
*Hobbs* v. *Hill*, 157 Mass. 556. *Douglass* v. *Barber*, 18 R. I. 459.

The defendants had no right to detain the plaintiff to enable
them to make a further investigation of the charge against him.
It was their duty to bring him before the court as soon as reason-
ably could be done. *Tubbs* v. *Tukey*, 3 Cush. 438, 440.

It cannot be said as matter of law that their delay for an hour
and a quarter was reasonable. The facts as to this are not agreed.
This interval may have overreached the time for the adjournment
of the court to which the plaintiff should have been taken, and in-
volved a yet longer delay. It is only when the facts are agreed
that this issue becomes a question of law, as stated in *Loring* v.
*Boston*, 7 Met. 409, 413, and *Gilmore* v. *Wilbur*, 12 Pick. 120,
cited by the defendants.

The jury should have been instructed substantially as requested
by the plaintiff, and the ruling given was erroneous.

*Exceptions sustained.*