[Civ. No. 12166.  Second Appellate District, Division Two.—December 21, 1939.]

RALPH E. PECKHAM et al., Appellants, v. WARNER BROS. PICTURES, INC. (a Corporation), et al., Respondents.

Bautzer & Ryan, Gregson Bautzer, G. Bentley Ryan and Bernard M. Silbert for Appellants.

Freston & Files, John P. McGinley and Ralph E. Lewis for Respondents.

McCOMB, J.—Plaintiffs appeal from (A) a judgment in favor of defendant Blaney Matthews predicated upon the granting of said defendant's motion for a judgment notwithstanding the verdict of the jury (sec. 629, Code Civ. Proc.) in favor of plaintiff Peckham for $5,000 compensatory damages and $2,500 punitive damages, and in favor of plaintiff Sorrell for $3,000 compensatory damages and $2,500 punitive damages; and (B) a judgment of the trial court in favor of defendant Warner Bros. Pictures, Inc., predicated upon the granting of said defendant's motion for a directed verdict, in an action to recover damages for false arrest and false imprisonment.

Viewing the evidence most favorable to plaintiffs, as we must in reviewing (1) a judgment predicated upon the granting of a motion for a judgment *non obstante veredicto* (*Reeves* v. *Lapinta,* 25 Cal. App. (2d) 680, 681 [78 Pac. (2d) 465]), and (2) a judgment predicated upon the granting of a directed verdict (*Estate of Flood,* 217 Cal. 763, 768 [21 Pac. (2d) 579]), the material facts are these:

Between April 30 and June 7, 1937, a general motion picture strike was in progress in southern California. The strike was called April 30th by the Motion Picture Painters' and Decorators' Union, and practically a general walkout followed. Plaintiff Sorrell had been employed at defendant Warner Brothers Pictures, Inc., prior to the strike, and was vice-president of his union. When the strike was called, he was elected captain of the pickets and was in charge of over 4,000 men on the picket lines. Plaintiff Peckham was also a member of the Motion Picture Painters' and Decorators' Union, and when the strike was called was acting as an assis-

tant to plaintiff Sorrell. Plaintiffs' work in connection with the union consisted principally in checking the picket lines, picking up reports and reporting any men who were out of line, drinking, or disorderly.

May 10, 1937, one Peterson, a truck driver for Warner Bros. Pictures, Inc., while en route from Hollywood to said defendant's studio on Dark Canyon Road, was stopped by a car which pulled across the road in front of him. He was ordered out of his truck, and the truck driven into a ravine.

On the same day Mr. Belcher, employed by the Twentieth Century Fox Film Corporation, while in the pursuit of his employer's business, stopped for a few minutes in Beverly Hills. He left his truck, and when he returned saw it being overturned by three or four men, who drove off in an automobile bearing license number 2R4753.

About the same time "The House of Westmore", located in Hollywood, a business supplying cosmetics and other make-up paraphernalia to motion picture studios, particularly Warner Bros. Pictures, Inc., was broken into in the night-time, creosote thrown over the furnishings, and the place completely wrecked.

June 4, 1937, Robert H. Wiese, employed by defendant Warner Bros. Pictures, Inc., as an architectural designer and draftsman, while on his way home from work in his car was crowded off the boulevard by another car and forced to stop. The occupants of the car then assaulted him in a most barbarous and brutal manner. One man jumped on the running board of his car, seized him by the throat and pounded him in the face, knocking out or loosening all of his teeth. He then seized Mr. Wiese's arm, held it stretched out over the upper edge of the car door and threw his weight upon it, which resulted in the shattering of Mr. Wiese's elbow. He was also hit violently in the stomach. Simultaneously another man on the other side of the car took hold of Wiese's hand, pulled his arm over and then took each finger separately and bent it back until it snapped. Afterward, when he began to lose consciousness his right hand was further shattered by being struck with some heavy implement. He was then hit on the head and rendered unconscious. After he regained consciousness he was hit a heavy blow on the back of the head and again rendered unconscious. Mr. Wiese testi-

fied that the car in which his assailants were riding was an old black Cadillac, at least two figures of the license number being "37".

Defendant Matthews on June 7, 1937, and for some time prior thereto was employed by his codefendant as superintendent of safety and personnel, and under his jurisdiction were the police, fire, and personnel departments of Warner Bros. Pictures, Inc. He had been informed of the outrages hereinbefore described. On the date last mentioned plaintiffs about 9 P. M. were in attendance at a meeting of the Motion Picture Painters' and Decorators' Union held at the corner of Santa Monica Boulevard and Wilcox Avenue in the city of Los Angeles. Plaintiff Peckham, about to commence his nightly duties, left the union hall at about 9 P. M. and invited a Mr. Chandler to accompany him. Getting into his automobile, he noticed the red lights of a police car headed toward him on the street. He recognized in the police car some of his fellow union members who had previously been in the union hall. He then returned to the union hall and reported to plaintiff Sorrell that he thought the police had picked up some of their boys, whereupon Sorrell, Peckham, and Chandler drove to the Hollywood police station, and, on reaching the sergeant's desk, noticed a group of men surrounding Mr. Charles Lessing, executive secretary of the Federated Motion Picture Crafts. Defendant Matthews was present, and, upon seeing Sorrell, rushed at him, rushing him down the hall and pushing him over a desk, where they were separated by officers. Matthews then said, "Arrest that man; put the handcuffs on him." The handcuffs were then taken off of Mr. Lessing and put upon plaintiff Sorrell. He was then taken outside of the police station and pushed into the back seat of a car with an officer on either side of him. As the automobile was driven out of the yard Sorrell held up his handcuffs as a symbol to plaintiff Peckham and Chandler, who were waiting for him in their car. Defendant Matthews then ordered the car stopped and went across the street to the car in which Peckham and Chandler were seated, accompanied by two police officers. Matthews told the officers to bring Peckham and Chandler with them. This was done, and plaintiffs Peckham and Sorrell were taken to the Burbank jail, where the latter was confined until 6 P. M. the next day,

at which time he was released. Plaintiff Peckham was removed from the Burbank jail to the Hollywood police station, where he was retained until about 5 P. M. of June 8th, at which time he was taken to the Central police station in Los Angeles. At 10 P. M. June 9th, 1937, he was released.

A.

■■ Plaintiffs rely for reversal of the judgment in favor of defendant Matthews on the proposition that, *where there is an unreasonable delay in taking a person arrested without a warrant before a magistrate, the arresting party becomes a trespasser ab initio and liable for false arrest and imprisonment.*

This proposition is tenable. Section 849 of the Penal Code reads as follows:

"When an arrest is made without a warrant by a peace-officer or private person, the person arrested must, without unnecessary delay, be taken before the nearest or most accessible magistrate in the county in which the arrest is made, and an information, stating the charge against the person, must be laid before such magistrate."

It is the law in California that it is the duty of one making an arrest without a warrant to bring the person so arrested before a proper magistrate without unnecessary delay, and if this is not done the officer or private person who made the arrest becomes a trespasser from the beginning. (12 Cal. Jur. (1923) 433.) It is also the law that an officer arresting without a warrant cannot justify himself in holding the prisoner for an unreasonable time before taking him before a magistrate upon the ground that such delay was necessary in order to investigate the case. (*Harness* v. *Steele*, 159 Ind. 286 [64 N. E. 875, 879]; *Keefe* v. *Hart*, 213 Mass. 476 [100 N. E. 558, 559, Ann. Cas. 1914A, 716].)

In 22 American Jurisprudence (1939), 366, False Imprisonment, section 20, the rule is thus stated:

"It is the duty of an officer or other person making an arrest to take the prisoner before a magistrate with reasonable diligence and without unnecessary delay; and the rule is well settled that whether the arrest is made with or without a warrant, an action for false imprisonment may be predicated upon an unreasonable delay in taking the person arrested before a magistrate . . . , regardless of the lawfulness

of the arrest in the first instance . . . an officer arresting a person without a warrant, as on view under statute, is liable for a false imprisonment where he detains the prisoner an unreasonable time without securing a warrant or other legal authority for his detention.''

In *Vernon* v. *Plumas Lumber Co.*, 71 Cal. App. 112, 117 [234 Pac. 869], Mr. Justice Plummer, speaking for the court, says:

''We do not need to decide whether the agents of the appellant brought themselves within the provisions of section 145 of the Penal Code further than to state that there is nothing in the record establishing any necessity for the action of the agents of the defendant, in taking the plaintiff to the county jail instead of taking him with themselves at the time they repaired to the presence of the magistrate. Under the circumstances we do not very well see how the trial court could have come to any other conclusion than that there was an unnecessary delay in taking the plaintiff before the committing magistrate, and, therefore, that his imprisonment, as found by the trial court, was wholly unwarranted. That the agents of the appellant were ignorant of the provisions of section 849 of the Penal Code does not lessen their duty in such cases, nor obviate the results of the clear showing in the transcript that the plaintiff was unnecessarily confined in the county jail while deliberations were being had as to the further proceedings to be taken. In *Keefe* v. *Hart et al.*, 213 Mass. 476 [Ann. Cas. 1914A, 716, 100 N. E. 558], the supreme court, considering similar questions, said: 'It cannot be said as matter of law that their delay for an hour and a half, by officers arresting without warrant, in taking the prisoner before a magistrate, was reasonable, since such delay might have been beyond the time of adjournment of the magistrate's court, and involved a further delay; the question becoming one of law only when the facts are agreed'; and the same court in its opinion further said: 'The defendants had no right to detain the plaintiff to enable them to make a further investigation of the charge against him. It was their duty to bring him before the court as soon as reasonably could be done.'

''The defendant's agents in this case did exactly what the supreme court of Massachusetts has said is unlawful to be

done under such circumstances. The plaintiff was not only imprisoned while the agents of the appellant were not only not investigating the charge against the plaintiff, but were making efforts to have some charge placed against the plaintiff and his arrest thereafter effected under a warrant charging him with an offense. In *Jackson* v. *Miller*, 84 N. J. L. 189 [86 Atl. 50], it was held that the detention in a public place for even an hour of a person arrested without a warrant, by a deputy fish and game warden, upon what seemed to be probable or good cause to believe that the law had been violated, constituted false imprisonment. The rule is well established that a prisoner is entitled to a hearing within a reasonable time after his arrest, and that a delay for an unreasonable time in bringing him before the magistrate for examination constitutes false imprisonment.''

█ Applying the above-stated rules of law to the facts of the instant case, since plaintiff Sorrell was incarcerated for almost twenty-four hours before being released, and in fact never taken before a magistrate, and plaintiff Peckham was incarcerated for more than forty-eight hours before being taken before a magistrate and released, the case was properly submitted to the jury for a determination of the issue as to whether an unreasonable time had elapsed after the arrest of said plaintiffs without taking them before a magistrate.

B.

Plaintiffs rely for reversal of the judgment in favor of defendant Warner Bros. Pictures, Inc., on this proposition:

█ *It was a question of fact for the determination of the jury whether or not defendant Matthews acted as an agent of his codefendant in making the arrests.*

This proposition is likewise tenable. The law is established in California that a principal is liable for false imprisonment by an agent or employee acting within the scope of his authority. (*Weir* v. *Continental Oil Co.*, 5 Cal. App. (2d) 714, 716 [43 Pac. (2d) 375].) The cases of *Mackie* v. *Ambassador Hotel etc. Corp.*, 123 Cal. App. 215 [11 Pac. (2d) 3], and *McInerney* v. *United Railroads*, 50 Cal. App. 538 [195 Pac. 958], are factually different from the present case and therefore inapplicable.

Applying the rule above stated to the present case, it was a question of fact for the determination of the jury whether

or not in making the arrests defendant Matthew was acting within the scope of his authority and as an agent of his co-defendant.

For the foregoing reasons the judgments appealed from are and each is reversed.

MOORE, P. J., Concurring.—I concur.

Under the facts of this case, while there was much to arouse suspicion, there does not appear to have been probable cause for the arrest of plaintiffs. But in view of the extraordinary events that surrounded the barbarous maiming and beating of certain workers while a strike was in progress, it appears no more than reasonable that an officer in the discharge of his duties should have taken pains to get legal evidence before accusing those suspected. Whether he took more than a reasonable time after taking them into custody before releasing or bringing the suspects before the magistrate, was a question for the jury's determination.

Wood, J., dissented.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 19, 1940.