CLINE, RESPONDENT, *v.* TAIT ET AL., APPELLANTS.

(No. 8449.)

(Submitted January 16, 1945. Decided February 9, 1945.)

[155 Pac. (2d) 752.]

572

*Messrs. Lew L. Callaway, Ralph J. Anderson* and *M. J. Thomas,* for Appellants, submitted an original and a reply brief; *Mr. Anderson* argued the cause orally.

*Mr. G. J. Jeffries* and *Mr. E. J. Stromnes,* for Respondent, submitted a brief; *Mr. Jeffries* argued the cause orally.

MR. JUSTICE CHEADLE delivered the opinion of the court.

On a previous appeal the judgment of the district court was reversed and a new trial ordered. (*Cline* v. *Tait,* 113 Mont. 475, 129 Pac. (2d) 89.) The present appeal is from a judgment for plaintiff on the second trial.

The action was brought for the recovery of damages from the defendant Tait and the surety on his official bond, for the false imprisonment of plaintiff. By stipulation prior to the first trial the question of unlawful arrest was eliminated from the case. A statement of the case appears in our former opinion and we shall not encumber this opinion by repeating, except to quote the following statement of the issues: ''Thus the case as submitted to the jury was whether defendant Tait arrested the plaintiff and if so whether the imprisonment subsequently became un-

lawful by an unreasonable delay in taking him before the nearest or most accessible magistrate in the county, and when the imprisonment by Tait ended; and in that case to determine what damages has been occasioned plaintiff by the unlawful imprisonment by Tait.''

So far as the questions to be decided are concerned there is no substantial difference in the evidence and issues of the first and second trials.

Defendants have assigned twenty-nine errors, summed up by them in the following questions:

1. Whether Cline, the plaintiff was imprisoned by Tait or by Postal Inspectors Cooney and Mellish.

2. If Cline was detained by Tait, did he unnecessarily in the circumstances of the case delay in taking Cline before a committing magistrate?

3. The failure of the trial court to define and limit the issues in conformity with the opinion of this court on the former appeal.

4. The propriety of reception of evidence as to occurrences after plaintiff Cline was lodged in the Cascade county jail.

5. The propriety of receiving evidence relative to the arrest and the instruction to the jury as to what constitutes an unlawful arrest when the arrest was not an issue in this case.

6. Errors in the instructions to the jury as to the law of the case.

7. Excessiveness of the verdict.

Plaintiff's cause of action under the pleadings as they now ▇▇▇▇ stand, is for damages for false imprisonment by defendant Tait. Section 10988, Revised Codes, thus defines this offense: ''False imprisonment is the unlawful violation of the personal liberty of another * * *.'' In this case it is alleged to have resulted from the failure of defendant Tait, after his arrest of Cline, promptly to take the latter before a committing officer, as required by section 595 of Title 18 U. S. C. A., which provides:

''It shall be the duty of the marshal, his deputy, or other officer, who may. arrest a person charged with any crime or

offense, to take the defendant before the nearest United States commissioner or the nearest judicial officer having jurisdiction under existing laws for a hearing, commitment, or taking bail for trial * * *.'' The judicial officers referred to by that section include the mayor of a city, justice of the peace, or other magistrate, of any state where the offender may be found, under the authority of section 591 of Title 18 U. S. C. A. Under the authorities this must be done as soon as the circumstances permit, with reasonable diligence, and without unnecessary delay. (*Von Arx* v. *Shafer*, 9 Cir., 241 Fed. 649, L. R. A. 1917F, 427; *Anderson* v. *Averbeck*, 189 Minn. 224, 248 N. W. 719; 4 Am. Jur. 49, sec. 70, note 20; 46 A. L. R. 809; Sec. 11766, Revised Codes.)

Defendants argue that because plaintiff failed to prove that a magistrate was available at Roundup on April 3rd, before whom the plaintiff might have been taken, there is no proof of unnecessary delay and plaintiff's case thus fails. Each side contends that the duty of proving the availability of a magistrate during that day was upon the other. The condition of the evidence is not such as to enable this court to determine whether or not a magistrate was available at the time and place in question. The evidence tends to prove that defendant made no effort to take plaintiff before a committing officer, and the record is silent as to whether he attempted to ascertain whether any such was available. Plaintiff proved that both a United States Commissioner and a justice of the peace resided and maintained offices at Roundup during the month of April, 1936, but not that either of them was there and available on the day in question.

The rule favored by this court in the former opinion is thus stated in Restatement of the Law of Torts, Ch. 5, sec. 136: ''If the actor, having obtained the custody of another by a privileged arrest * * * fails to use due diligence to take the other promptly before a proper court * * * the actor's misconduct makes him liable to the other only for such harm as is caused thereby and does not make the actor liable for the arrest or for keeping the

other in custody prior to the misconduct.'' The misconduct is the actor's failure to use due diligence to take the person in custoday before a proper court.

We suggest that in order to assist the court and the jury definite evidence on this question should have been produced by the party to be benefited thereby. We feel that the trial court, on the basis of the evidence before it, might justifiably have inferred that neither defendant Tait nor the postal inspectors intended to take plaintiff before a committing officer. Their actions and omissions support such inference. Their decision, after communicating with an assistant United States Attorney, to take plaintiff to Great Falls, coupled with their failure to make any effort to locate a migistrate, either at Roundup or en route, indicate a lack of such intention and a lack of due diligence in this regard. The condition of the evidence presented a question of fact as to due diligence, and consequently of false imprisonment by defendant Tait, properly submitted to the jury. The plaintiff proved a prima facie case of false imprisonment, after which the question of justification therefor was one of fact. Consequently the trial court was not in error in denying defendants' motions for non-suit and directed verdict.

Similarly we think, and so hold that the question of whether the detention, and consequently the false imprisonment, of Cline, was accomplished by the defendant Tait, was one of fact. The evidence of the actions of Tait and of the Postal Inspectors Cooney and Mellish was, perhaps, conflicting to some extent, but sufficient to raise a question of fact properly submitted to the jury for determination.

The former opinion herein narrowed the issues and established the law of the case. At page 485 of the reported decision in 113 Mont., at page 94 of 129 Pac. (2d), it was held: ''Giving effect to the preponderance of the evidence, the custody of Tait ceased some time between 11:30 a. m. and 1:00 p. m., when the start was made to Great Falls; and giving the fullest effect to plaintiff's testimony it ended at the latest at about 5:30 that afternoon, when the sheriff of Cascade county received plaintiff at

the jail at Great Falls. Since the alleged false imprisonment for which the defendant Tait was responsible did not in any event begin under the evidence or as a matter of law until 9:00 on the morning of the same day, it continued not over two and a half to four hours according to the great preponderance of the evidence, and not over eight and one-half hours according to plaintiff's testimony. The defendants are not liable for the detention during the trip of four and one-half to six hours, if the federal officers then had plaintiff in custody, and obviously in any event they cannot be liable for the much longer imprisonment of twenty and one-half hours in the Cascade county jail between the time of his detention there and his presentation before a magistrate.''

Defendants contend that under the ruling quoted the trial court erred in admitting evidence of happenings concerning the detention of plaintiff subsequent to the arrival at the Great Falls jail. But this ruling was based upon the law of the case applied to the first trial as established by the application of instructions, given without objection, to the evidence. Thus, at page 482 of the reported opinion in 113 Mont., at page 95 of 129 Pac. (2d), it is said: ''The issue was further narrowed by several instructions given without objection that * * * the defendants 'are liable to this plaintiff for the neglect, default or misconduct, if any, in office, during the period from April 3rd at 2:30 a. m., 1936, to 2 p. m. on April 4th, 1936, of said sheriff or any deputy sheriff, under sheriff, or jailor, appointed or employed by said Ralph Tait, as sheriff for such sum as will compensate plaintiff for such detriment, if any, proximately caused thereby * * *.' '' We think, on the first trial, the district court misconstrued the law in restricting the period of defendants' liability to any hour short of the time plaintiff was taken before a committing officer. However that instruction embodied the trial court's theory, concurred in by the parties, and became a part of the law of the case, under which the holding in our former opinion was correct in restricting defendants' liability to the period of time therein specified. No such in-

struction was given in the second trial, but the trial court held, as evidenced by Instruction 17, and we think correctly, that the period of defendants' liability extended to the time plaintiff was taken before a United States Commissioner during the afternoon of April 6th. Thus the conditions existing at the time of submission of the first case to the jury were materially different than at the second trial, and the holding in our first opinion became inapplicable and not binding upon the lower court at the second trial.

Appellants' remaining specification of error raises the question of excessiveness of the verdict. The verdict of $6,000 on the first trial was held by this court to have been given under the influence of passion and prejudice, and so excessive as to require a new trial.

By the complaint, according to the instructions, plaintiff demands $5,444.79 for great physical inconvenience and discomfort, loss of time, mental suffering, humiliation, shame, public ridicule and public disgrace.

A careful reading of the record fails to disclose evidence upon which the jury could have awarded damages for ''great physical inconvenience and discomfort, public ridicule or public disgrace.'' The award was necessarily based upon evidence of damage by reason of loss of time, mental suffering, humiliation, nervousness and shame.

As to the loss of time, the only evidence produced was that at the time of his arrest plaintiff was employed at one of the Roundup coal mines at a daily wage of between $8.50 and $9.00 per day. At most he was damaged to the extent of $36.00 by time lost.

Evidence of the other elements of damage is meager and conjectural and unsatisfactory, consisting chiefly of affirmative replies by plaintiff to questions by his counsel as to whether he had suffered mental anguish and humiliation by reason of his arrest and detention. Plaintiff's testimony in this connection is as follows: When asked whether Tait entered the Roundup jail after the arrest, he answered: ''When we got out of the car and

went into the jail I was kind of bewildered or frightened, I don't know.''

As to his treatment while detained, his only complaint was that while in the Great Falls jail he was not permitted to use a telephone for the purpose of communicating with his attorney, although he was permitted to send him a telegram.

In response to a question as to what effect the imprisonment and confinement had upon him, plaintiff replied: ''Well, I felt as any one else would that had been arrested and taken from your home town into a strange town, with no reason at all. I was ashamed and rather frightened and bewildered. * * * I was under a nervous strain.'' With reference to being held up to public suspicion and scorn, he testified that, ''It is quite natural after you are arrested on a charge or taken into custody on a charge or taken to jail that way that,—well, people look at you and think you are a criminal or something.''

Replying to questions as to mental anguish experienced by reason of his confinement, he stated: ''Certainly I suffered mental anguish * * *. Very certainly. My constitutional rights were not being looked after properly, and my civil liberty was taken away from me. I was just going to have to stay in jail. There was no chance of getting out, if I couldn't get to the commissioner's office and get a bail set.'' When asked if he suffered any mental anguish, pain, suffering, chagrin, humiliation or damages by reason of his incarceration in the Musselshell jail from nine a. m. to shortly after noon, he replied that he did. He described this pain and suffering by stating, ''Well, I was nervous; I was scared.'' And again he said, ''Well, I was being taken away from my home there and brought up here to a strange place where I didn't know anyone.''

The court appears to have erroneously admitted evidence, over objection, as to mental anguish suffered during the period from the time of the arrest until nine a. m. of April 3rd, as appears by the following questions and answers:

''Q. Very well, state whether or not you suffered any mental anguish, pain, suffering, nervousness, or damages from the time

you were taken into custody about two or two-thirty A. M., on the morning of April 3, 1936, to nine o'clock A. M. of that day. A. Yes, I did.

"Q. I take it that you were not accustomed to being brought from your home by Mr. Tait and confined in the county jail of Musselshell County at that hour of the day, were you? A. No."

This error appears to have been cured by Instruction 16 to the effect that defendant Tait was not in duty bound to take plaintiff before a magistrate before nine o'clock of April 3rd. This evidence, affecting only the amount of damages suffered, in view of the decision arrived at, was harmless.

It thus appears that the only elements of damage before the jury were mental anguish or suffering, humiliation, nervousness and shame.

Defendants assign error in the giving of Instruction 8, defining arrest. This instruction was proper. In this case there could be no false imprisonment without a previous arrest, and Instruction 3 specifically removed from the case the element of damages for wrongful arrest.

The general rule in this state is that the amount of damages to be awarded in an action of this character is a question for the jury, and unless its determination appears to have been influenced by passion or prejudice or some improper motive, or unless the amount is outrageously disproportionate, either to the wrong done or the situation or circumstances of the parties, the court will generally not interfere with the verdict. (*Panisko* v. *Dreibelbis*, 113 Mont. 310, 124 Pac. (2d) 997; *Johnson* v. *Horn*, 86 Mont. 314, 283 Pac. 427; *Hunt* v. *Van*, 61 Mont. 395, 202 Pac. 573.) On the other hand, cases abound in which awards have been held excessive because disproportionate to the damages suffered. (*Mitchell* v. *Randal*, 288 Pa. 518, 137 Atl. 171; *Hunter* v. *Kansas City Rys. Co.*, 213 Mo. App. 233, 248 S. W. 998; *United States ex rel. Humphrey* v. *Janus*, D. C., 30 Fed. (2d) 530, 534.) And numerous cases hold that under such circumstances the courts properly reduce the amount of the award. In *United States* v. *Janus*, supra, the court said: "It is now the

recognized rule that the court should reduce the verdict, if the amount is such as to suggest passion or prejudice upon the part of the jury.''

Taking into consideration the circumstances of the parties, and the meager and unsatisfactory evidence as to actual damages, we are impelled to the conclusion that the verdict was given under the influence of passion and prejudice; that because the damages were so highly conjectural the verdict cannot otherwise be accounted for. Among the circumstances considered was the conviction of the plaintiff of the very crime, the circumstances of which resulted in the arrest out of which this action grew. His conviction of this crime may properly be considered in mitigation of damages. (*Reynolds* v. *Maynard,* 137 Mich. 42, 100 N. W. 174.) The question of exemplary damages is not involved since it is not alleged that the acts complained of were done maliciously, wilfully or wantonly. (*Thompson* v. *Shanley,* 93 Mont. 235, 17 Pac. (2d) 1085.)

We are well aware of numerous cases in which verdicts comparable to this in false imprisonment actions have been upheld as not excessive. However, the rule is universally recognized that each case must be determined by its peculiar circumstances as affecting the question of actual damages suffered. In this case the circumstance of the conviction of plaintiff of the crime, the commission of which resulted in his arrest, is a very persuasive factor in the determination of actual damages and excessiveness of the verdict.

We therefore hold the verdict of $4,500 so excessive as to shock the conscience and understanding of the court and to entitle defendants to a new trial. And in order to facilitate the termination of this litigation, we do not hesitate to reduce the amount of the verdict, under authority of numerous decisions of this court. (*Tanner* v. *Smith,* 97 Mont. 229, 33 Pac. (2d) 547; *Wise* v. *Stagg,* 94 Mont. 321, 22 Pac. (2d) 308; *Kelly* v. *John R. Daily Co.,* 56 Mont. 63, 181 Pac. 326.)

After a careful consideration of all of the evidence upon the point of damages sustained by plaintiff, we are of the opinion

that the sum of $1,500 is a maximum sum sufficient to fully compensate plaintiff.

The cause is remanded to the district court, with directions to grant a new trial, unless within thirty days after the remittitur is filed with the clerk of that court, plaintiff shall file his written consent that the judgment for damages may be reduced to $1,500. If such consent is filed, the judgment will be modified accordingly as of the date of its original entry, and, as so modified, will stand affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS and ANGSTMAN concur.

MR. JUSTICE ADAIR dissenting:

"We have in this case an instance of an age-old type of contest—one between a citizen and peace officers who exceed their powers. Protection of the citizen requires that he be not molested by such officers except pursuant to the precise terms of lawful, official authority. On the other hand, enforcement of the state's orders requires that its officers be protected from excessive harassment so that they will not be paralyzed by fear in discharge of their functions; * * *." (*Ingo* v. *Koch*, 2 Cir., 127 Fed. (2d) 667, 671.)

The defendant sheriff was expressly required by both federal (sec. 595, Title 18 U. S. C. A.) and state statute (sec. 11766, Rev. Codes 1935) to take plaintiff before the nearest magistrate without unnecessary delay. (See *McNabb* v. *United States,* 318 U. S. 332, 63 S. Ct. 608, 87 L. Ed. 819, 825.) This he failed to do and thereby be became liable in tort for false imprisonment. Where, as here, there is an unreasonable delay in taking the person arrested without a warrant before a magistrate, the arresting party becomes a trespasser *ab initio* and liable for false arrest and false imprisonment. (*Peckham* v. *Warner Bros. Pictures,* 36 Cal. App. (2d) 214, 97 Pac. (2d) 472.) "The tort is a continuing one, for the consequences of which defendant is liable until plaintiff is released." (35 C. J. S., False Imprisonment, sec. 31, p. 547.)

Section 11766, Revised Codes 1935, supra, is the same as sec-

tion 849 of the California Penal Code, construed by the court in *Peckham* v. *Warner Bros. Pictures*, 36 Cal. App. (2d) at page 218, 97 Pac. (2d) at page 474, wherein the court said: "It is the law in California that it is the duty of one making an arrest without a warrant to bring the person so arrested before a proper magistrate without unnecessary delay, and if this is not done the officer or private person who made the arrest becomes a trespasser from the beginning. (12 Cal. Jur. (1923) 433.) It is also the law that an officer arresting without a warrant cannot justify himself in holding the prisoner for an unreasonable time before taking him before a magistrate upon the ground that such delay was necessary in order to investigate the case."

In *Missouri Pac. R. Co.* v. *Yancey*, 180 Ark. 684, 22 S. W. (2d) 408, 410, the court said:

"The action was one for false imprisonment; and the arrest having been proved by the undisputed evidence, the burden was upon the defendant to show that it was by authority of law. (*McAleer* v. *Good*, 216 Pa. 473, 65 A. 934, 10 L. R. A., n. s., 303, 116 Am. St. Rep. 782, and cases cited.)

"Every imprisonment of a man is a trespass; and in an action to recover damages therefor, if the imprisonment is proved or admitted, the burden of justifying it is on the defendant. (*Bassett* v. *Porter*, 10 Cush., Mass., 418; *Jackson* v. *Knowlton*, 173 Mass. 94, 53 N. E. 134; and *Snead* v. *Bonnoil*, 166 N. Y. 325, 59 N. E. 899)."

In the *Yancey Case*, supra, a verdict for $3,000 was held not excessive.

In *Ingo* v. *Koch*, supra, a verdict of $5,000 was held not excessive.

In *Hassenauer* v. *F. W. Woolworth Co.*, 314 Ill. App. 569, 41 N. E. (2d) 979, a verdict of $250 to a 14-year old boy for false imprisonment consisting of a fifteen minute detention and search by defendant's floorwalker was held not excessive.

In *Peckham* v. *Warner Bros. Pictures*, 42 Cal. App. (2d) 187, 108 Pac. (2d) 699, 700, the court upheld verdicts for compensatory damages of $3,000 and $5,000, respectively, saying:

"The law is established that a jury's verdict will not be set aside on appeal on the ground that the damages are excessive, unless the verdict is so outrageously excessive as to suggest at first blush, passion, prejudice or corruption. (Citing cases.) Applying the rule just stated, the verdicts in the present case are not in our opinion excessive. Plaintiffs were incarcerated for over a day and received much unfavorable publicity in the local press."

Two trials have been had of this case in the district court. Two separate juries have measured the damages. The first jury awarded $6,000. The second jury, $4,500. This court now assumes to determine the amount that the 24 trial jurors should have fixed in their respective verdicts. The court now says $1,500 is the proper amount. This invades the province of the jury.

"The question of the amount of damages to be recovered is one, particularly for the jury, as is the existence of particular elements of damages; * * *. The decision of the jury as to the amount of damages is generally conclusive, and will not be disturbed unless the award is so flagrantly large or small as to evince passion, partiality, or corruption." (35 C. J. S., False Imprisonment, sec. 59, at pages 607, 608.) The award here is not within the above rule.