No. 13491

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

GEORGE BENBO,

Defendant and Appellant.

---

Appeal from: District Court of the Twelfth Judicial District,
Honorable B. W. Thomas, Judge presiding.

Counsel of Record:

For Appellant:

Donald A. Ranstrom argued, Chinook, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Allen Chronister argued, Assistant Attorney General,
 Helena
William Solem, County Attorney, Chinook, Montana

---

Submitted: April 13, 1977

Decided: OCT 26 1977

Filed: OCT 26 1977

_Thomas J. Kearney_
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Defendant George Benbo appeals from a conviction of felony theft under section 94-6-302(3), R.C.M. 1947, following a jury trial in the district court, Blaine County.

On August 20, 1975, a complaint was signed and arrest warrant issued from the Cascade county justice court charging defendant with two counts of felony theft under section 94-6-302(1)(a), R.C.M. 1947. Defendant was arrested in Blaine County, and without being arraigned there, he was immediately taken by the police to Yellowstone County to recover the stolen items. From there he was taken to Cascade County. He was later tried and convicted in Blaine County.

Defendant's appeal contends the trial court should have granted a motion to suppress evidence and that he was denied effective assistance of counsel by his retained counsel at the pretrial and trial level. He contends the trial court should have granted his motion to suppress because the complaint and arrest warrant issued from Cascade County were defective because the Cascade County justice of the peace had no jurisdiction to issue them. He relies on section 95-1503(c)(4), R.C.M. 1947, which provides: "A charge shall * * * [state] the time and place of the offense as definitely as can be done * * *." He also contends the trial court should have granted the motion to suppress evidence of statements he allegedly made to the police while on the way to Yellowstone County from Blaine County to recover the stolen guns. In this regard, he contends the police violated his rights under section 95-901(a), R.C.M. 1947, and 95-603(d)(3), R.C.M. 1947, which provide that upon an arrest the person must be taken "without unnecessary delay" for an initial appearance before a judge in the county where the arrest is made.

The facts leading up to defendant's arrest and conviction are:

On August 8, 1975, approximately 30 handguns were stolen from the Coast to Coast hardware store in Great Falls, Montana, Cascade County. A semi-automatic rifle was also stolen from the weapons room of the Great Falls police department. Defendant was not involved in either burglary.

The day after the burglaries, defendant was approached in Chinook, Montana, by John Bauman, his nephew by marriage. Bauman and his brother had earlier purchased the stolen weapons. Bauman asked defendant if he would be interested in buying some "merchandise" without indicating the nature of the "merchandise". Defendant indicated he would look at the "merchandise". At his own request, Bauman borrowed defendant's pickup truck, drove it to the point near Great Falls where the handguns had been cached, picked up the guns and returned to Chinook. On August 10, after examining the weapons at Bauman's brother's home in Chinook, defendant bought the handguns and took the semi-automatic rifle to sell on consignment. Defendant later brought the weapons to Billings, Montana.

On August 19, 1975, the Bauman brothers were arrested in Chinook by officers of the Great Falls police department. The officers learned the weapons had been sold in Chinook to defendant, George Benbo.

On August 20, 1975, a complaint was presented in Great Falls justice court, charging defendant with two counts of felony theft under section 94-6-302(1)(a), R.C.M. 1947, alleging the offenses had been committed in Great Falls. A warrant for defendant's arrest was issued by a Great Falls justice of the peace.

On the afternoon of August 20, three Great Falls police officers drove to Chinook. The proceeded from there with a Blaine County deputy sheriff to a ranch south of Chinook in Blaine County where defendant was working. They arrived at the ranch at about 8 o'clock that evening. Defendant identified himself, was placed

under arrest, and given copies of the complaint and the arrest warrant, both of which he read. Defendant was told he had the right to remain silent and that anything he said could and would be used against him. He also was told he had the right to an attorney and if he could not afford an attorney, one would be provided for him. Defendant acknowledged he understood these rights.

The officers told defendant they knew he had the guns and recovery of the guns would be in his best interest. Defendant admitted he had the guns and stated they were at his house in Billings. After the officers explained a warrant could be obtained allowing them to search the house, defendant indicated a search warrant would not be necessary, that he would voluntarily give them the guns.

The officers then decided to go directly to Billings with defendant rather than returning immediately to Great Falls. Defendant went inside the ranch house to get his personal gear and returned with a small satchel. One of the officers opened the satchel and found a .36 caliber black powder pistol, one of the weapons taken in the Coast to Coast store burglary.

The three Great Falls officers, with defendant in custody, left the ranch for Billings at about 9 o'clock p.m. The officers testified defendant was very cooperative and relaxed throughout the trip and that he freely engaged in a conversation covering a variety of topics. One of the officers testified he considered the conversation to be an interrogation of defendant, and conceded that although defendant was asked several times if he was "aware of his rights" the full "Miranda" warning was given only once, before the trip began.

Defendant and the police officers arrived in Billings shortly after midnight. After picking up a Yellowstone county deputy sheriff, they proceeded to defendant's house. Defendant showed the officers the suitcase in which the pistols were kept, and

-4-

told them the rifle was under the bed. The officers recovered the weapons, loaded them into the patrol car, and after stopping for a meal, drove to Great Falls, arriving there at 5:30 on the morning of August 21.

The record does not disclose when, or whether, defendant was given an initial appearance before a judge in Cascade County. The action against defendant in that county was dismissed by the county attorney on September 3, 1975. The information under which defendant's conviction was obtained was filed in Blaine County on October 16, 1975. Defendant was found guilty on March 24, 1976. Following denial of his motion for a new trial, he appealed.

By his motion to suppress, defendant sought to exclude all evidence gathered by the Great Falls police from the time he was arrested at the ranch. This included the gun found in the satchel, the guns recovered from his Billings house, and statements he allegedly made during the trip from the ranch to Great Falls, concerning his belief or knowledge that the guns had been stolen when he purchased them. After a hearing, the district court denied the motion. At trial all of the guns were admitted into evidence, and two of the arresting officers testified defendant told them he knew or believed the guns were stolen. In his testimony, defendant denied making any statements to the officers concerning the origin of the guns.

Defendant first contends the motion to suppress should have been granted because the complaint issued from the Cascade county justice court was defective. The complaint states defendant committed felony theft on August 10, 1975, in Great Falls, Cascade County. Defendant contends the police knew at the time they applied for the arrest warrant out of Cascade County that he had nothing to do with the burglaries committed there and he had purchased the guns in Blaine County. Therefore, defendant argues the complaint fails

to meet the requirement of section 95-1503(c)(4), R.C.M. 1947, that a charging document must state "the time and place of the offense as definitely as can be done."

Here, however, the purpose of the complaint was not to charge the offense but to establish the basis for an arrest warrant. While the police knew defendant had purchased the guns in Blaine County, they also knew his truck was used to retrieve the handguns that had been hidden in Cascade County. One of the arresting officers testified the complaint and arrest warrant were issued out of Cascade County for that reason.

In any event, the charging document was the Information filed in Blaine County subsequent to the dismissal of the Cascade County action, and its sufficiency is not questioned. The fact that the complaint places the offense in Cascade County does not invalidate either the complaint itself or the arrest warrant issued and served upon the complaint.

Defendant's second challenge to the district court's denial of his motion to suppress is grounded on the failure of the arresting officers to take him before a Blaine County judge promptly after his arrest.

Section 95-901(a), R.C.M. 1947, sets forth the duty of a person making an arrest to provide the arrested person with an initial appearance. In relevant part it provides:

> " * * * If an arrest is made in a county other than the one in which the warrant was issued the arrested person shall be taken without unnecessary delay before the nearest and most accessible judge in the county where the arrest was made."

Identical language, imposing the same duty, is found in section 95-603(d)(3), R.C.M. 1947.

Defendant was arrested in Blaine County on the Cascade County warrant, taken from there to Yellowstone County and finally jailed in Cascade County. It does not appear the arresting officers made

any attempt to bring defendant before any judge for the initial appearance required by section 95-901(a), R.C.M. 1947, and 95-603(d)(3), R.C.M. 1947.

The question becomes whether this failure to provide defendant with a prompt initial appearance is to have the effect of excluding the guns recovered and statements allegedly made after his arrest.

The key requirement of these statutes is that an arrested person is to be taken before a judge "without unnecessary delay". The Revised Commission Comment to section 95-901 indicates the provision for an appearance before a judge in the county where the arrest is made is designed to reduce the time between the arrest and initial appearance. The Comment states:

> " * * * [This provision] allows a first appearance in the county where the arrest is made rather than forcing the arrested person to be removed to another county for the purpose of stating the charge and setting bail."

This Court has considered the effect of a delay between arrest and initial appearance in a variety of factual situations. In Cline v. Tait, 113 Mont. 475, 129 P.2d 89 (1942), a false imprisonment action turned on whether a sheriff's failure to promptly take the plaintiff before a judge rendered the detention unlawful. This Court held that while the reasonableness of the length of the delay was a jury question, it was not unreasonable as a matter of law to wait until ordinary working hours before providing an initial appearance. The judgment was reversed, and following retrial, this Court again considered the question of the reasonableness of a delay between arrest and initial appearance. In Cline v. Tait, 116 Mont. 571, 155 P.2d 752 (1945), emphasis was placed on evidence tending to show the sheriff did not intend to provide the plaintiff with a prompt initial appearance, rather than the time that transpired between arrest and initial appearance.

In two cases concerning the admissibility of confessions made during a delay between arrest and initial appearance, this Court held such confessions are not rendered inadmissible solely by reason of the delay. In State v. Nelson, 139 Mont. 180, 189, 362 P.2d 224 (1961), this Court, quoting from the New Jersey Supreme Court case, State v. Pierce, 4 N.J. 252, 72 A.2d 305, stated:

> "'A confession is not rendered inadmissible solely by reason of a delay in taking the arrested person before a magistrate but that circumstance becomes an important factor to be given serious consideration in determining whether or not the confession was voluntarily made. The mere failure to follow the procedural rule, however, does not of itself destroy the voluntariness of the confession if the abuses the rule seeks to prevent did not in fact take place.'"

In State v. White, 146 Mont. 226, 235, 405 P.2d 761 (1965), this Court cited Nelson with approval in holding that failure to meet the statutory requirement of a prompt initial appearance is not determinative of the admissibility of a confession made in the interim between arrest and initial appearance.

The state contends defendant voluntarily agreed to turn over the stolen guns and voluntarily admitted he knew they were stolen when he purchased them, and the delay between his arrest and initial appearance therefore cannot have the effect of causing the guns and statements to be excluded.

Under this reasoning, the statutory requirement of an initial appearance without unnecessary delay after an arrest is practically meaningless. Only when a defendant can affirmatively show statements, admissions, or confessions attributed to him were either not made at all, or were involuntarily made, would the failure to provide him with a prompt initial appearance be taken into account. This would put an almost impossible burden on a defendant. Furthermore, there would be no incentive for arresting officers to conform their procedures to statutory guidelines.

Assurance that statements are voluntarily made is not the only objective of the requirement of a prompt initial appearance. In _Nelson_ this Court considering a statute which required that a person arrested without a warrant was to be provided with an initial appearance without unnecessary delay, stated:

> "The purpose of this statute is to insure that the person arrested is advised of the charge against him in order to enable him to prepare a defense, and to protect him from being held incommunicado for protracted periods of time." 139 Mont. 188.

The full range of protections afforded a prisoner at an initial appearance is set forth in section 95-902, R.C.M. 1947. The duty of the court is:

> "The judge shall inform the defendant:
>
> "(a)   Of the charge against him;
>
> "(b)   Of his right to counsel;
>
> "(c)   Of his right to have counsel assigned by a court of record, in accordance with the provisions of section 95-1001;
>
> "(d)   That he is not required to make a statement and that any statement made by him may be offered in evidence at his trial;
>
> "(e)   Admit the defendant to bail in accordance with the provisions of this code."

It is necessary the defendant be informed of these rights by the court. The fact that an arrested person is read his "Miranda" rights by the arresting officers, as in the present case, does not release the officers from their obligation to provide that person with an initial appearance before a judge. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L Ed 2d 694, 717 (1966); Commonwealth v. Tingle, 451 Pa. 241, 301 A.2d 701, 703 (1973).

As the Montana cases cited above indicate, this Court has not previously emphasized the importance of the statutory requirement of a prompt initial appearance.

In false imprisonment cases, this requirement has been con-

sidered in the context of the reasonableness of the length of the delay between arrest and initial appearance. Cline v. Tait, 113 Mont. 475, 129 P.2d 89 (1942); Cline v. Tait, 116 Mont. 571, 155 P.2d 752 (1945); Rounds v. Bucher, 137 Mont. 39, 349 P.2d 1026 (1960).

In cases involving confessions made during the interim between arrest and initial appearance, the requirement of a prompt initial appearance has been considered in the context of the voluntariness of the confession. State v. Nelson, supra; State v. White, supra.

In a criminal case not involving the admissibility of a confession, a 21 day delay between arrest and initial appearance was found to have not prejudiced the defendant in the presentation of his defense at trial. The delay was treated as having no effect on the defendant's conviction, and this Court indicated the only remedy available to the defendant was a possible false imprisonment action. State v. Johnston, 140 Mont. 111, 114, 367 P.2d 891 (1962).

By their terms sections 95-603(d)(3), R.C.M. 1947, and 95-901(a), R.C.M. 1947, impose a duty on persons making an arrest to take their prisoner "without unnecessary delay before the nearest and most accessible judge" in the county where the arrest is made.

It is time to recognize the importance of this requirement. The Supreme Court of Pennsylvania has developed a test for determining whether evidence obtained during a delay between arrest and initial appearance will be excluded. In Commonwealth v. Futch, 447 Pa. 389, 290 A.2d 417, 419 (1972), that court stated:

> "This Court has similarly been conscious of the possible adverse effects of police conduct which deviates from the unequivocal language of Rule 118 [which requires an initial appearance without unnecessary delay]. We have held that failure to comply with Rule 118 does not ipso facto render inadmissible evidence obtained by the police during the 'unnecessary delay' and that it is incumbent upon defendant to show some prejudice

from the delay. [Citing cases.]  While this Court has never articulated precisely what constitutes 'prejudice' in the context of 'unnecessary delay' proscribed by Rule 118, we think it appropriate to follow the federal approach and <u>exclude all evidence obtained during 'unnecessary delay' except that which  * * *  has no reasonable relationship to the delay whatsoever.</u>"  (Emphasis and paraphrased material added.)

Having considered the language of sections 95-603(d)(3), R.C.M. 1947, and 95-901(a), R.C.M. 1947, and the purposes for their requirement of a prompt initial appearance that have been articulated by this and other courts, we approve the test set forth above.

Henceforth, the effect of a failure to take a person before a judge without unnecessary delay after his arrest is to be determined as follows:  When a defendant bases a motion to suppress evidence upon a claim that he was not provided a prompt initial appearance, the burden is first on the defendant to show the delay was unnecessary.  The district court should focus on the diligence of the persons who made the arrest in bringing the defendant before the nearest and most accessible judge.  While the length of the time between arrest and initial appearance is not determinative of the "necessity" of the delay, it is a factor to be considered.

Once a defendant has established the delay was unnecessary, the burden shifts to the prosecution.  The state must show the evidence obtained during the delay was not reasonably related to the delay.  Absent such a showing the evidence will be excluded.

Applying this test to the facts of the instant case, we conclude the pistol found in defendant's satchel before the trip to Billings began was properly admitted.  The recovery of this pistol was in no way related to the delay between arrest and initial appearance caused by the failure of the arresting officers to take defendant before the nearest and most accessible judge subsequent to his arrest.

The weapons taken from defendant's Billings house and the

statements he allegedly made while being taken from the ranch where he was arrested and ultimately to Great Falls, however, should have been excluded. The delay was unnecessary. The arresting officers made no attempt to find an available judge in Blaine County after the arrest there. They made no attempt to find a judge in Yellowstone County after they had taken defendant to Billings to recover the stolen guns. The officers took no action indicating in any way they intended to provide defendant with a prompt initial appearance. There is no record that defendant was brought before a judge for an initial appearance after he was taken to Great Falls.

The statements allegedly made by defendant during the trip from the ranch to Billings concerning his knowledge or belief that the guns were stolen were reasonably related to the delay between arrest and initial appearance. The fact that defendant was cooperative after his arrest does not operate as a waiver of his right to an initial appearance and cannot be used to excuse the officers' failure to bring him without unnecessary delay before the nearest and most accessible judge. It is bare conjecture to claim that defendant's waiver of his right to remain silent and his right to counsel at that point reflects what he would have said had he been promptly brought before a judge. One of the purposes of the initial appearance is to give a defendant the opportunity to be judicially informed of the charge against him. Here, the Cascade County complaint which defendant read immediately after his arrest, alleged he had stolen the guns in Great Falls. Only after defendant was told by the arresting officers that they knew he had not taken the guns did defendant admit to having them. The effect of this assurance is unknown, but a judge's explanation of what the complaint on its face indicated would have eliminated any possible doubt concerning the nature or gravity of the offense charged.

Since we hold for the above reasons that the district court

should have granted defendant's motion to suppress the evidence gathered in Billings and statements defendant allegedly made to the arresting officers, it is unnecessary to determine whether defendant's conviction should be reversed on the ground of inadequacy of counsel.

The judgment is reversed and defendant granted a new trial in accordance with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices