CLINE, Respondent, *v.* TAIT et al., Appellants.

(No. 8,281.)

(Submitted April 6, 1942. Decided September 21, 1942.)

[129 Pac. (2d) 89.]

476

478

*Mr. Lew L. Callaway, Mr. Ralph J. Anderson* and *Mr. M. J. Thomas,* for Appellants, submitted an original and a reply brief; *Messrs. Callaway* and *Anderson* argued the cause orally.

*Mr. G. J. Jeffries* and *Mr. E. J. Stromnes,* for Respondent, submitted a brief and argued the cause orally.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

The defendants sheriff and his surety appeal from a judgment against them for $6,000 for false imprisonment. The complaint recited that on the night of April 2, 1936, the sheriff, Tait, "took plaintiff prisoner," imprisoned him in the county jail of Musselshell county until the afternoon of April 3rd, and then without authority removed plaintiff from the said jail, "unlawfully spirited" him from the county, removed him to Great Falls and imprisoned him in the jail of Cascade county "where plaintiff was so confined and imprisoned unlawfully until the 4th day of April, 1936"; that these acts were done by defendant Tait "without complaint being or having been filed against Plaintiff in any Court, without examination or hearing of any kind in any Court, without bringing or having said Plaintiff brought before any Court or Magistrate at any time, and without any warrant, commitment or legal process of any kind being or having been issued by any Court."

The answer denied the false arrest and imprisonment and alleged as a further defense that there was no federal jail in Musselshell county; that Cooney and Mellish were United States post office inspectors and had authority to arrest individuals who had committed postal offenses; that on March 2, 1936, a first class mail bag containing $9,200 was stolen from the railroad station at Roundup; that the act constituted a felony under the statutes of the United States and of the

State of Montana; that Richardson and Fanning were arrested and stated that the offense was committed by them and a third person whom they described without naming and who· the defendants were informed and believed was plaintiff Cline; that knowing these facts and circumstances the two postal inspectors communicated them to defendant Tait, informed him that they had sufficient information and probable cause· for plaintiff's arrest, and requested Tait to ask him to come to the county jail for a conference with them; that defendant complied with their request; and that plaintiff had thereto-fore talked with them about it, expressed a willingness to talk further with them, and went voluntarily; that they then in-formed him of their information that he was a participant in the crime, and that plaintiff expressed a willingness to go to Great Falls and confront Fanning; that defendant Tait at the· inspectors' request, to which plaintiff willingly assented, con--veyed them all to Great Falls in his automobile as an accom-modation; that on arriving at Great Falls he drove to the· vicinity of the county jail, where the postal inspectors and plaintiff alighted, and defendant then drove his car to a gar-age; that defendant did not arrest plaintiff or deprive him of· his liberty; that on April 5, 1936, plaintiff informed the in-spectors at Great Falls that he knew where the money was concealed and on the same day went with Palagi, the sheriff of Cascade county, to a place about three miles from Roundup, took the money, amounting to $9,189, from the place of con--cealment and gave it to Palagi, who delivered it to the postal inspectors; that on April 4, 1936, a complaint was filed with a United States Commissioner at Great Falls charging plaintiff` with the mail robbery; that he was held for action by the grand jury, thereafter indicted, tried in federal court and convicted of the crime; that the judgment has not been revoked, annulled or set aside.

The further defense thus contains the affirmative allegation. that plaintiff came voluntarily at the request of the inspectors communicated to plaintiff by defendant Tait, and allegations·

intended to show reasonable cause for the arrest and imprisonment.

Plaintiff made a motion to strike all of those parts of the further defense which related to the postal inspectors and which set forth defendant's version of the transaction in question, including those leading up to the alleged arrest and the subsequent filing of the complaint against plaintiff, and also those relating to his indictment, trial and conviction. The motion was denied.

Plaintiff then filed a reply admitting that Cooney and Mellish were postal inspectors and had authority "to arrest individuals who had committed federal crimes," admitting the arrest of Richardson and Fanning, and the arrest, indictment and conviction of plaintiff, but alleging that any information implicating plaintiff was obtained from Fanning and Richardson by coercion under arrest and by conspiracy between Tait, Mellish and Cooney for the purposes of justifying a prior arrest of plaintiff by Tait in the preceding month and establishing his defense to a prior action by plaintiff for "false arrest and unlawful imprisonment" in connection therewith, and to enable Tait to profit from the reward offered for the recovery of the money. The reply further alleged that no charge was filed against plaintiff until after Tait had arrested and removed him to Cascade county and that there was no probable cause for the arrest; denied that Fanning and Richardson had involved plaintiff in the crime or that he consented to go voluntarily to the jail at Roundup or at Great Falls. It further alleged that by a promise of reward he was tricked by defendant and the inspectors into learning from Fanning where the money was secreted; that he was then taken by the sheriff of Cascade county to the vicinity of Roundup where he found and delivered up the money; that he was thereupon charged with complicity in the crime, was held in excessive bail at the instance of the inspectors; that the case was not presented to the grand jury for many months after his imprisonment, and was not promptly tried; that Richardson and

Fanning pleaded guilty to the charges; that defendant and inspectors conspired to obstruct justice by inducing Fanning and Richardson by promises of immunity and parole to testify falsely against plaintiff and by attempting to cause a witness "to modify, alter and color his testimony against" plaintiff; that a representative of the insurance company, by which the mail bag was insured, attempted to obstruct justice by preventing the giving of testimony in plaintiff's behalf; that defendant and the inspectors were directly interested in the outcome of the criminal prosecution "in that plaintiff * * * had filed against Tait a civil action for false arrest and unlawful imprisonment in connection with said offense," and ''well knew a conviction of plaintiff, however obtained, could be urged as a defense in said civil action, and that Tait and said postal inspectors conspired to unlawfully bring about plaintiff's conviction" for that purpose "well knowing plaintiff was innocent of the crime charged against him"; that the latter facts were denied admission as evidence at the criminal trial and that the jury had no information of the real interest affecting "the testimony of said persons; that the day following an adverse disposition of said civil action for false imprisonment, and within the week following plaintiff's conviction in Federal Court, Tait represented he had positive information Cline had nothing whatever to do with the robbery in question; * * *."

Defendants moved to strike many of the allegations of the reply, including those attempting to impeach the federal court judgment of conviction and to charge defendant, the inspectors and others with conspiracy and attempts to obstruct justice; but the motion was denied in full.

The prayer of the complaint was for $10,000 damages for the resulting "great physical inconvenience and discomfort, loss of time, mental suffering, humiliation, shame, public ridicule and public disgrace," but at the trial plaintiff waived any damages in excess of the $6,000 covered by the sheriff's bond. He also stipulated at the trial that "At this time, to

the end there may be no confusion as to the issue involved, the record may show there are no claims asserted so far as the alleged unlawful arrest and apprehension of the plaintiff by the defendant was effected on the seventh of March, 1936, or upon the second arrest on the night of the second of April." Thus the unlawfulness of the arrest itself was eliminated from the case. The issue was further narrowed by several instructions given without objection that "when a person is imprisoned, without a warrant, by a peace officer, the person so imprisoned must, without unnecessary delay, be taken before the nearest or most accessible magistrate in the county in which such person is imprisoned, and a complaint, stating the charge against such imprisoned person, must be made before such magistrate"; (a paraphrase of section 11766, Rev. Codes); that ''if you find from a preponderance of the evidence in this case that the plaintiff Cline was imprisoned and restrained of his liberty by the defendant Tait, then you are further instructed, as a matter of law, that there is no evidence in this case that the defendant Tait did at any time bring, or attempt to bring, the plaintiff before a Justice of the Peace or a Committing Magistrate or a United States Commissioner in Musselshell County, and by virtue of failing so to do, you are instructed you must return your verdict in this case for the plaintiff unless you should further find from a preponderance of the evidence that such restraint or imprisonment of the plaintiff by the defendant Tait was voluntary or consented to by the plaintiff, or that the plaintiff was imprisoned by the Postal Inspectors and not by the defendant Tait"; that the defendants "are liable to this plaintiff for the neglect, default or misconduct, if any, in office, during the period from April 3rd at 2:30 a. m., 1936 to 2 p. m. on April 4th, 1936, of said sheriff or any deputy sheriff, undersheriff, or jailor, appointed or employed by said Ralph Tait, as sheriff for such sum as will compensate plaintiff for such detriment, if any, proximately caused thereby, not to exceed, however, the sum of Six Thous-

and Dollars." Those points thus constitute part of the law of the case and we need not consider their correctness.

The jury's verdict was for the plaintiff in the full sum of $6,000. It is not necessary to recount the evidence in general, for the appellant's contention is not that the evidence fails to sustain the verdict, but that the verdict is excessive. In this connection we must note that by the plaintiff's stipulation the contention that the arrest was unlawful has been removed from consideration, and that it is the law of the case that the imprisonment became unlawful only when a reasonable time had expired without plaintiff's having been taken before a magistrate in Musselshell county. It is further the law of the case that the defendants' liability to plaintiff is limited not only to the period from April 3, 1936, at 2:30 a. m., to April 4, 1936, at 2:00 p. m. (the time of the arrest to the time of the arraignment) but also to such "neglect, default or misconduct, if any, in office * * * of such sheriff or any deputy, undersheriff or jailor, appointed or employed by said Ralph Tait, as sheriff, * * *."

Thus the case as submitted to the jury was whether defendant Tait arrested the plaintiff, and if so whether the imprisonment subsequently became unlawful by an unreasonable delay in taking him before the nearest or most accessible magistrate in the county, and when the imprisonment by Tait ended; and in that case to determine what damage had been occasioned plaintiff by the unlawful imprisonment by Tait.

In reaching a verdict for plaintiff, the jury must have found that he was imprisoned by Tait after a reasonable time had expired in which to take him before a magistrate in the county. No evidence was offered to show when plaintiff could have been first taken before a magistrate in Musselshell county. Plaintiff showed that local magistrates and United States Commissioners existed in the county, but not when or whether they were available on the day in question. Defendants offered no evidence on the point, their defenses being a denial of the arrest, and the contentions that plaintiff voluntarily accom-

panied Tait and that the imprisonment, if any, was by the postal inspectors.

It was for the jury to determine when a reasonable time had expired and when the imprisonment had therefore become unlawful. However, it cannot be said unreasonable as a matter of law to wait until ordinary office hours (see discussion and citations, 25 C. J. 493, section 62). The only statute we have found fixing office hours for magistrates in Montana is section 4929, Revised Codes, fixing the hours for certain justices of the peace at 9:00 a. m. to noon, and from 1:00 p. m. to 5:00 p. m. In the state of the record the jury could not properly conclude that a delay to nine o'clock in the morning was unreasonable.

While there is authority otherwise, the best rule seems to be that stated in 1 Restatement of the Law of Torts, page 315, section 136, as follows:

"If the actor, having obtained the custody of another by a privileged arrest, * * * fails to use due diligence to take the other promptly before a proper court, * * * the actor's misconduct makes him liable to the other only for such harm as is caused thereby and does not make the actor liable for the arrest or for keeping the other in custody prior to the misconduct."

Since "false imprisonment is the unlawful violation of the personal liberty of another * * * " (sec. 10988 Rev. Codes), it does not exist until the moment at which the imprisonment becomes unlawful, and the officer cannot logically be held liable for damages theretofore accruing.

It was also for the jury to determine when the defendant Tait's custody of the plaintiff terminated and the custody of some other officer began; since however by statute the Cascade county jail and the prisoners therein are placed under the sole charge of the sheriff of that county (sec. 4774, Subd. 7, Rev. Codes), it is clear that the defendant Tait's liability in any event ceased at about 5:30 on the afternoon of the same day when the plaintiff was confined there, and that

it was Palagi whose duty it then was to take him before a magistrate under .the law of the case. The overwhelming weight of testimony was that Tait's liability ceased some time between 11:30 a. m. and 1:00 p. m. of that day when the postal inspectors Mellish and Cooney started to Great Falls with plaintiff at the suggestion of an assistant United States district attorney.

There is no question that Tait and Wall, the chief of police of Roundup, had brought plaintiff to the Musselshell county jail at the inspectors' request. Tait, the two inspectors, and another witness, Rider, testified that the inspectors took charge of plaintiff at Roundup and had him removed to Great Falls, and that Tait merely furnished them the transportation; that when they arrived at Great Falls the inspectors and plaintiff went to the county jail and that Tait and Rider drove away in the car. Palagi, the Cascade county sheriff, testified that he received Cline at the county jail as a federal prisoner in charge of the postal inspectors, and that Tait was not even present. The only evidence even tending to indicate that Tait had anything more to do with the trip than to furnish transportation was plaintiff's testimony, in conflict with that of all these witnesses, that he was "reasonably sure" that Tait accompanied him into the Cascade county jail, and that at a stop at Grass Range enroute Tait had accompanied him to an outhouse, although there was other testimony that no stop was made enroute. That evidence may possibly be considered as tending to show that when the party arrived at Grass Range, and perhaps at the county jail at Great Falls, plaintiff was still the prisoner of the defendant Tait rather than of the inspectors, although certainly the great preponderance of the evidence is to the contrary. Giving effect to the preponderance of the evidence, the custody of Tait ceased some time between 11:30 a. m. and 1:00 p. m., when the start was made to Great Falls; and giving the fullest effect to plaintiff's testimony it ended at the latest at about 5:30 that afternoon, when the sheriff of Cascade county received plaintiff at the

jail at Great Falls. Since the alleged false imprisonment for which the defendant Tait was responsible did not in any event begin under the evidence or as a matter of law until 9 :00 on the morning of the same day, it continued not over two and a half to four hours according to the great preponderance of the evidence, and not over eight and one-half hours according to plaintiff's testimony. The defendants are not liable for the detention during the trip of four and one-half to six hours, if the federal officers then had plaintiff in custody, and obviously in any event they cannot be liable for the much longer imprisonment of twenty and one-half hours in the Cascade county jail between the time of his detention there and his presentation before a magistrate.

In addition to the element of time there is the further element applicable, according to the law of the case embodied in the instructions given without objection, that the plaintiff was not taken before a magistrate in the county of the arrest. The evidence gave the jury no real assistance in determining the award of damages necessary to compensate plaintiff under the circumstances. He testified that his earnings were about $1,000 during 1935, and about the same during 1936, or an average of some $3 or $4 per day. He testified also that the imprisonment put him under a nervous strain, and that he experienced "mental anxiety, pain and anguish" and that "when you finally get out you imagine everyone is looking at you." However all those elements were already involved in the arrest itself before the imprisonment is claimed to have become unlawful, and also in the detention by Sheriff Palagi, and possibly by the postal inspectors, after the defendant Tait's responsibility terminated. The amount of damages to be apportioned against Tait on account of this element is for the jury to determine, but the jury has not an unlimited discretion in that respect.

While there is no established rule to be followed in ascertaining whether an award of damages is excessive (*Johnson* v. *Horn,* 86 Mont. 314, 283 Pac. 427), we must under the circum-

stances conclude that the verdict of $6,000 is excessive for the imprisonment of two and one-half hours to eight and one-half hours involved in this suit, including the nervous strain and mental anxiety, pain and anguish thereby occasioned and the failure to take plaintiff before a magistrate in Musselshell county.

There is no question of exemplary damages here involved, ▮ since the complaint neither alleges that the acts complained of were done maliciously, wilfully or wantonly nor sets forth facts from which one or more of such elements may be inferred. (*Thompson* v. *Shanley*, 93 Mont. 235, 17 Pac. (2d) 1085.) The allegations of the reply cannot have that effect since they cannot add to the cause of action stated in the complaint. (*Armstrong* v. *Butte, Anaconda & Pac. Ry. Co.*, 110 Mont. 133, 99 Pac. (2d) 223.)

Under the circumstances and particularly in view of the ▮ attacks made upon the defendant Tait and the other officers in the reply, the evidence and the oral argument, we must conclude that the excessive damages appear to have been given under the influence of passion and prejudice so as to entitle defendants to a new trial. (Sec. 9397, Rev. Codes.) No other conclusion seems possible in view of plaintiff's counsel's statements on oral argument, made according to the record with tense body, distorted countenance, wild gesticulations and the appearance of strong passion, that the entire case from beginning to end was a "frame-up" on the part of Tait, the postal inspectors, Chief of Police Wall, Rider, and "that agent of the insurance company"; that Wall was a grafter and a "stool pigeon"; that the defendant's witnesses could not be believed; that they had ruined plaintiff's reputation; that "this conspiracy was framed up by these lying, grafting, crooked, infamous police officers, and this resulted in that fraudulent judgment." Although the court sustained defendant's counsel's objection and admonished the jury to disregard the statements, the record shows little or nothing other than those statements and the related evidence and allegations of the reply,

upon which to explain the $6,000 verdict, the limit of the surety's liability, on account of Tait's responsibility for two and one-half to eight and one-half hours of some fourteen and one-half months' imprisonment, including his sentence after conviction.

A question is raised with reference to the court's order denying defendant's motion for a new trial; but we need not consider it, since appeals from such orders have been abolished and questions formerly raised on such appeals may be raised and reviewed on appeal from the judgment, whether or not a motion for new trial has been made. (Sec. 9745, Rev. Codes.)

In view of the narrowing of the issues at the trial, it becomes unnecessary to decide the other questions presented by the appeal, which assign error upon the court's refusal to strike from the reply and misconduct of plaintiff's counsel in argument to the jury.

As noted above, the defendant in his answer pleaded the federal court judgment as part of his justification, and plaintiff in his reply sought to impeach it by charging defendant Tait, the postal inspectors and others with having brought it about through a conspiracy to obstruct justice. In so doing plaintiff pleaded that Tait and the inspectors "well knew a conviction of plaintiff, however obtained, could be urged as a defense in said civil action." However in answer to defendant's contention that the judgment cannot be so collaterally impeached, plaintiff here contends that the judgment could not be properly urged as a defense to an action for false imprisonment as distinguished from an action for malicious prosecution, and that defendant's improper act of pleading it as a defense excuses plaintiff's improper impeachment of it. Since it is elementary that such a judgment may not be collaterally attacked, it is immaterial how plaintiff was led to attack it. But we need not consider the various questions suggested in that connection, including plaintiff's right to take inconsistent positions in trial and appellate courts with refer-

ence to the availability of the defense of the federal court judgment, and the court's denial of the motions to strike from the answer and reply.

The judgment of conviction, if applicable at all, could have no conceivable effect except perhaps some possible confirmation of the defense of reasonable cause for the arrest itself. Certainly it could have no bearing upon the question whether the imprisonment thereafter became unlawful by reason of defendant Tait's failure to take plaintiff before a magistrate in the county within a reasonable time.

Since at the trial plaintiff chose to eliminate the charge originally included in his complaint that the arrest itself was wrongful, the issues were narrowed to the other allegations of the complaint that the defendant Tait wrongfully imprisoned plaintiff in that he failed to bring him before a magistrate in Musselshell county without unnecessary delay "and unlawfully spirited away and removed plaintiff" to Great Falls and confined him in the county jail of Cascade county.

In view of these circumstances and without reference to the questions presented by the motions to strike from the answer and the reply before the trial, the subsequent narrowing of the issues made irrelevant in any event all reference to the conviction and to plaintiff's attack thereon and upon the motives of defendant Tait, the postal inspectors and others. The court should accordingly upon the retrial, forbid evidence or argument tending by passion or prejudice to distract the jury from its duty of ascertaining the damages, if any, required to compensate plaintiff for the unlawful imprisonment by defendant Tait, if any.

The judgment is reversed and the cause ordered remanded for a new trial in accordance with this opinion.

ASSOCIATE JUSTICES ERICKSON, ANDERSON and MORRIS concur.

MR. JUSTICE ANGSTMAN:

I concur in the result announced in the foregoing opinion, but not with all that is said in it. I think it is improper for

490

this court to attempt to weigh conflicting evidence or to determine what issues were established by the preponderance of the evidence. The question of the weight of the evidence and of the preponderance thereof is exclusively for the jury.