618 P.2d 372

Martin DIAZ et al.,
Plaintiffs–Appellants,

v.

LOCKHEED ELECTRONICS et al.,
Defendants–Appellees.

No. 4419.

Court of Appeals of New Mexico.

Oct. 2, 1980.

Don E. Dutton, Dutton & Winchester, Ltd., Las Cruces, for plaintiffs–appellants.

Joe L. McClaughtery, Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, for defendants–appellees.

## OPINION

LOPEZ, Judge.

Plaintiffs claim that they were falsely imprisoned by their employer, Lockheed Electronics Corporation, and two of its agents (hereafter referred to collectively as Lockheed) at the time they went through the clearance procedures associated with their discharge from the NASA Johnson Space Craft Center, at the White Sands Test Facility. The court below, believing that, as a matter of law, Lockheed had reasonable grounds to detain the plaintiffs, granted summary judgment for the defendants. We reverse.

Around 10:00 A.M. on June 28, 1977, the six plaintiffs were called from their work and informed that their employment with Lockheed was terminated. After being informed of their discharge, the plaintiffs dispersed to eat their lunches. Some returned to their work area for lunch, and some ate at the cafeteria. They were told to reassemble at 12:30 to meet the van which would transport them around the facility during the clearance process. Arriving at the van, the plaintiffs found not only the driver, but also L. C. Stokes, a management official, and Walter Raypon, a security guard, uniformed and armed with a gun. Raypon indicated that his gun was loaded. The plaintiffs could not exit the van by themselves, since the handle to the sliding door, having broken, had been removed and was kept by the driver. During the clearance, which took about two and half hours, the plaintiffs were not allowed to leave their group. They were not allowed to use restroom facilities, drink water, or use the telephone, except at one area. They claimed they were marched through work

areas in front of other workers, which caused them humiliation and embarrassment.

Plaintiffs had been discharged for involvement in a scheme of falsifying their time cards, a plan which they thought had been approved by the management. Later, as the result of arbitration between their union and Lockheed, the plaintiffs were reinstated in their former positions.

■ False imprisonment involves the unlawful interference with the personal liberty or freedom of locomotion of another. There is no need that the plaintiffs have been held in jail or custody. *Martinez v. Sears, Roebuck & Co.*, 81 N.M. 371, 467 P.2d 37 (Ct.App.), *cert. denied*, 81 N.M. 425, 467 P.2d 997 (1970).

> The restraint constituting false imprisonment may arise out of words, acts, gestures or similar means which induce reasonable apprehension that force will be used if the plaintiff does not submit and it is sufficient if they operate upon the will of the person threatened and result in a reasonable fear of personal difficulty or personal injuries.

*Id.* at 373, 467 P.2d at 39. In deciding whether summary judgment is proper, an appellate court must view the matters presented in the light most favorable to support the right to trial on the issues. *C & H Construction & Paving Co. v. Citizens Bank*, 93 N.M. 150, 597 P.2d 1190 (Ct.App. 1979). The plaintiffs, through their pleadings and depositions, have established that defendants unlawfully interfered with their personal liberty. If, however, the defendants had reasonable cause to restrain plaintiffs, then plaintiffs' suit for false imprisonment fails. *See, Stienbaugh v. Payless Drug Store, Inc.*, 75 N.M. 118, 401 P.2d 104 (1965). The issue presented to us is whether, as a matter of law, the defendants have established that they had reasonable cause to restrain the plaintiffs in the manner described above.

In *Stienbaugh*, a shop owner detained a customer whom he believed had been shoplifting. The customer sued him for false imprisonment and won a judgment because the court found the shop owner did not have reasonable cause to detain that customer. By analogizing to the situation in the case before us, we believe that if Lockheed can prove that it had reasonable grounds for employing these security measures in these circumstances, it will have established a defense to plaintiff's suit. Because this is an appeal from a summary judgment, we must determine whether reasonable cause to detain is a question of law or of fact, or mixed. In *Stienbaugh* the New Mexico Supreme Court wrote:

> [I]f the question of reasonable or probable cause for the detention . . . is undisputed, it is one of law for the court, but if the evidence is conflicting, it is a mixed question of law and fact. . . .

*Id.* at 122, 401 P.2d at 106. The court in that case found that the question of reasonable cause was disputed because, although the manager of the store had reason to believe the plaintiffs were shoplifting, having been so informed by a clerk, the plaintiffs testified to the contrary; and the merchandise was not in their possession.

■ In the instant case there is conflicting evidence of the existence of reasonable cause to detain the plaintiffs in this fashion. Lockheed stated that it feared the plaintiffs might sabotage the system or disrupt the work activities because they had just been fired. In support of this, it claimed the plaintiffs, or some of them, had been involved in disruptive activities that very morning before their discharge. The plaintiffs denied this. They also denied that Lockheed had reasonable cause to believe that they posed any danger to the facilities. The plaintiffs had never threatened sabotage; they were not charged with a criminal offense; many of them held, at one time or another, various degrees of military clearance; and one of them had worked at the site for over eleven years. Plaintiffs asserted that the defendants did not seriously consider them a security threat, since they allowed plaintiffs to go off by themselves at lunch for approximately two hours, after they had been informed that they had been fired and before they were to meet the van.

A reasonable doubt as to the existence of a genuine issue of material fact in dispute precludes summary judgment. *Goodman v. Brock*, 83 N.M. 789, 498 P.2d 676 (1972). The party opposing the motion is to be given the benefit of all reasonable doubts in determining whether a genuine issue exists. *Pharmaseal Laboratories, Inc. v. Goffe*, 90 N.M. 753, 568 P.2d 589 (1977). An issue is raised when there is some evidence in dispute. *Id.* There is disputed evidence in the case before us of whether Lockheed had reasonable cause to detain plaintiffs. This issue is sufficient to preclude summary judgment.

The judgment of the trial court is reversed.

IT IS SO ORDERED.

SUTIN, J., specially concurs.

WOOD, C. J., dissents.

SUTIN, Judge (specially concurring).

I specially concur.

Plaintiffs, when discharged as employees of Lockheed, sued defendants for damages arising out of defendants' conduct which "deprived each Plaintiff of his liberty without lawful justification and amounted to false arrest, false imprisonment and kidnapping ...." Defendants were granted summary judgment and plaintiffs appeal.

In summary judgment proceedings, defendants must first make a prima facie showing that there was no genuine issue of material fact as to false imprisonment. The burden then shifts to plaintiffs to come forward and demonstrate that a genuine issue of material fact did exist which required a trial. *Goodman v. Brock*, 83 N.M. 789, 498 P.2d 676 (1972). Plaintiffs did not challenge defendants' burden and we could very well hold that defendants made a prima facie showing that no genuine issue of fact existed; that the only issue on this appeal is whether plaintiffs met their burden. However, we must recognize, as the parties did, a letter decision of the trial court that focused the issues in this appeal in two respects:

(1) In a letter decision, the trial court granted summary judgment only on the claim of false imprisonment. Plaintiffs did not in the trial court nor in this appeal seek any relief from the limited decision upon which summary judgment was entered. Without reference to tort claims of false arrest and kidnapping, these claims have been abandoned.

(2) In its letter decision, the trial court found "that there is a factual issue as to whether or not plaintiffs were in fact imprisoned on the installation during the clearing process." This means that the defendants failed to make a prima facie showing that no genuine issue of material fact existed. Plaintiffs, therefore, have a valid claim for false imprisonment. This alone would be sufficient to deny defendants' motion for summary judgment. But, the trial court found as a matter of law that defendants had reasonable grounds to detain plaintiffs, and were therefore entitled to summary judgment.

In false imprisonment, it is only necessary for plaintiffs to show that they have been restrained of their liberty; the presumption then arises that they were unlawfully imprisoned, and it is for the defendants who committed the tort to show legal justification therefor. The burden of proof of probable cause rests on the defendants. If one seeks to escape liability for false imprisonment, he has the burden of proving the justification for his action. *Isaiah v. Great A. & P. Tea Co.*, 111 Ohio App. 537, 15 Ohio Ops.2d 291, 174 N.E.2d 128 (1959), 86 A.L.R.2d 430 (1960). Legal justification is a defense. Good faith and probable cause are defenses. *Perea v. Stout*, 94 N.M. 595, 613 P.2d 1034 (Ct.App.1980). *Stienbaugh v. Payless Drug Store, Inc.*, 75 N.M. 118, 401 P.2d 104 (1965) stands for the proposition that with or without the aid of legislation, reasonable cause to detain a person is the pivotal question in false imprisonment.

"False imprisonment consists of intentionally confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so." Section 30–4–3, N.M.S.A.1978. "The

Penal Code definition governs in civil as well as criminal actions." *City of Newport Beach v. Sasse*, 9 Cal.App.3d 803, 88 Cal. Rptr. 476 (1970); *Muller v. Reagh*, 215 Cal. App.2d 831, 30 Cal.Rptr. 633 (1963); *S. S. Kresge Company v. Carty*, 120 Ga.App. 170, 169 S.E.2d 735 (1969); *Cline v. Tait*, 139 Mont. 475, 129 P.2d 89 (1942). Under this statute, defendants are liable if two events occur: (1) defendants intentionally confined or restrained plaintiffs without their consent and (2) defendants knew that they had no lawful authority to do so.

*Martinez v. Sears, Roebuck and Co.*, 81 N.M. 371, 467 P.2d 37 (1970), also a false imprisonment case, cited as authority two jurisdictions above in which the penal code governs civil actions—California and Georgia.

*Martinez* says:

To support the determination of false imprisonment there must be evidence or a reasonable inference of *unlawful* interference with the personal liberty or freedom of locomotion of another. [Emphasis added.] [Id. 81 N.M. 373, 467 P.2d 39.]

"False" comes from the common law and is synonymous with "unlawful." *Burlington Transp. Co. v. Josephson*, 153 F.2d 372 (8th Cir. 1946). "Unlawful interference" is the equivalent of "defendants knew that they had no lawful authority to do so."

What is meant by the phrase "with knowledge that he has no lawful authority to do so"?

"Lawful" means "legal, warranted or authorized by law; having the qualifications prescribed by law; not contrary to nor forbidden by the law." Black's Law Dictionary (Rev. 4th Ed.), p. 1032 (1968); *Commonwealth v. Stortecky*, 238 Pa.Super. 117, 352 A.2d 491 (1976); *Deming v. Osinski*, 21 Ohio App.2d 89, 255 N.E.2d 279 (1969); *In Re D.*, 58 Misc.2d 1093, 269 N.Y.S.2d 825 (1968).

"Authority" means "permission." Black's Law Dictionary, p. 168. "Lawful authority" to do an act means permission to act in a manner that is not contrary to nor forbidden by law. "No lawful authority" to do an act means no permission to act in a manner

that is contrary to or forbidden by law. *Stortecky, supra,* says:

... It will be readily seen that it is not the province of the jury to determine whether or not conduct is "legal" or "warranted or authorized by law" or "having the qualifications prescribed by law" or "not contrary to nor forbidden by the law." Determination of these matters is the province of the Court. . . . [352 A.2d 492.]

In other words, defendants knew as a matter of law that they had no right to act in a manner that was contrary to or forbidden by law when they intentionally confined or restrained plaintiffs without their consent.

I read the court's decision to mean that plaintiffs have established that defendants intentionally confined or restrained plaintiffs without plaintiffs' consent and with knowledge as a matter of law that they had no right to act in a manner that was contrary to or forbidden by law.

Nevertheless, the trial court held as a matter of law that defendants had reasonable grounds to detain plaintiffs; that defendants established a valid defense as a matter of law. The burden of proving justification rests on defendants.

"Reasonable grounds" pertain to facts and circumstances which would warrant a prudent and cautious person in believing that plaintiffs should be detained. *Yucca Ford, Inc. v. Scarsella*, 85 N.M. 89, 509 P.2d 564 (Ct.App.1973).

Defendants' second defense was that "The Defendants had probable cause for all of their acts and conduct taken in relation to the subject matter of this lawsuit." "Probable cause" is an honest belief on part of defendants, based on reasonable grounds, that plaintiffs should be detained. *Yucca Ford.* "Detain" means to "restrain."

The question to decide is this:

Is the evidence undisputed that defendants had an honest belief, from the facts and circumstances in this case, that would warrant a prudent and cautious person in believing that plaintiffs should be restrained?

False imprisonment does not exist until the moment at which an imprisonment becomes unlawful. *Cline, supra.* It is undisputed that on June 28, 1977 at 12:30 p. m., after plaintiffs had been discharged that morning, the clearing process began in which plaintiffs were placed in the only van available and were escorted by Stokes and Raypon to various points of the White Sands facility. Imprisonment became unlawful at that moment.

For defendants to have reasonable grounds upon which to restrain plaintiffs, we must look solely to the evidence presented prior to 12:30 p. m. on June 28, 1977.

Defendants established the following facts by affidavits:

The White Sands test facility is a government owned facility utilized to support the various programs of the National Aeronautics and Space Administration (NASA). Lockheed is a support contractor for NASA at White Sands and is responsible for the operation and maintenance of the entire facility. It is responsible for enforcing the security program as directed by the NASA contract and also is responsible for all White Sands security. Its prime concern is safeguarding the facility from sabotage, protecting the employees and work flow from disruption and protecting the property of the U. S. Government from theft or intentional damage, acts of espionage, sabotage and various Executive Orders pertaining to industrial and physical security of federal property.

Whenever a Lockheed employee at White Sands is terminated, as plaintiffs were for a time card manipulation plan, the employee is required to process out of the facility before the employee is allowed to clear the site. To complete the clearing process, the employees have to travel to different areas of the facility. These points are so separated as to require transport by vehicle.

It is a constant concern of management and supervisory personnel that a disgruntled employee could at any time manually open valves or remotely controlled systems of the facility which could cause damage or destruction to the system. NASA constantly expressed concern for potential threat to life or property by some irrational of disgruntled employee. Thus "sabotage" could be quickly executed in such a manner that it could endanger the capability of the site as well as employees' lives. Although none of the plaintiffs had a history indicating sabotage, neither did they have a history of being discharged from their employment at this or any other facility. Because of the number being discharged simultaneously and because this was an unpredictable situation, Lockheed was concerned about possible sabotage.

White Sands deals routinely with hypergolic propellants (ignite on contact) that are both toxic and corrosive, cryogenic fluids (liquified gases) and high pressure gases. A disgruntled employee who knows the system could wreak havoc both to sophisticated test facilities and to employees in the area.

On the morning of the day the discharged plaintiffs were cleared, but prior to the time they were officially notified they were discharged, there were implied threats and disruptive activities by members of plaintiffs' group against other employees who refused to undertake a time card manipulation plan and were therefore not discharged. The work flow of the whole area was disrupted by the allegation of plaintiffs who participated in the time card day–off plan and feelings between the two groups were becoming tense and irritable. Plaintiffs were verbally harassing the group who failed to agree to this fraudulent plan. This verbal dispute between the groups lasted from about 7:30 a. m. until 10:00 a. m., the morning of June 28, 1977, when management requested plaintiffs to report to the main office to be informed of their discharge. Little, if any, work was done during those 2½ hours and the situation was very disruptive to the work flow and employee morale. Plaintiffs had undertaken a time card manipulation plan which led to their discharge.

It may be said that under these facts and circumstances, defendants had an honest belief that would warrant plaintiffs' restraint.

Plaintiffs' evidence was presented by depositions of all plaintiffs except Bales. Their testimony prior to imprisonment is directly contrary to that of defendants. Each plaintiff was an electric test technician with a good family background. Diaz and Weilenbeck had top secret clearance in military service and Mott had an honorable discharge.

The day before the discharge, each plaintiff was taken, one by one, to the main office in 100 area in which each plaintiff explained the alleged falsifications of time cards and were assured that they had nothing to worry about.

The day before the discharge three other employees had been discharged, but they were not restrained by defendants. These employees checked themselves out.

The following day, June 28, 1977, each plaintiff came to work at 7:30 a. m. and did his normal days work until 10:30 a. m. when each plaintiff was notified to appear in the main office in area 100. There, each plaintiff was discharged and notified that they could have their lunch at the usual 11:30–12 noon time. Each plaintiff had lunch and collected his tools that had to be checked out. They were notified to be present for check out that began about 12:30 p. m. In the 10:30 a. m.–12:30 p. m. interim period, nothing occurred to disturb defendants. There was no disruption of work activities.

None of the plaintiffs had made any threats of sabotage or attempted sabotage, nor stole anything, nor destroyed or smeared any of Lockheed's plans or designs, nor threatened or attempted to do so. No criminal charges were brought against them for alleged falsification of time cards. They never gave Raypon, the security officer, any reason, in fact, to believe that they might commit a crime or sabotage due to the fact that they were discharged.

Peterson worked for Lockheed for 10½ years. Cordova worked at NASA for five years.

Under these facts, the evidence is in conflict. A genuine issue of material facts exist whether defendants had an honest belief from the facts and circumstances in this case that would warrant a prudent and cautious person in believing plaintiffs should be restrained.

Defendants argue that the above are nothing more than pseudo issues and do not create a genuine issue as to any *material* fact. If these issues were false or spurious, then defendants should set forth what the genuine issues of *material* fact are. Defendants rely upon the court's letter decision. They admit that the court "assumed" for purposes of summary judgment that "there had, in fact, been a restraining of the Plaintiffs' right of movement," yet says that "This case does not involve ... an imprisonment." Perhaps, defendants state the genuine issue of material fact to be whether they had "reasonable cause" to restrain the liberty of plaintiffs, that if defendants had reasonable cause then they were entitled to judgment. Defendants state:

> ... *Stienbaugh* held that "reasonable cause" was a question of law whether, *as here,* the facts surrounding that determination are not in conflict. [Emphasis added.]

That is the issue in this case and it is a genuine issue of *material* fact, not pseudo. Defendants then proceed to discuss "the issues of sabotage and disruption of work on *the morning Plaintiffs were discharged*" to illustrate the court's reasoning on plaintiffs' two points raised in this appeal. In this area, defendants failed to establish that "reasonable cause" was a question of law for the court.

Just prior to the discussion of disruption of work the morning plaintiffs were discharged, defendants state:

> Moreover, it is simple hornbook law that there can be no false arrest or imprisonment if the acts alleged to be such are performed under lawful authority. 32 Am.Jur.2d § 5 .... This point of law alone was a sufficient basis for the trial court to grant Defendants summary judgment.

This issue was decided against defendants in the letter decision.

Defendants are mistaken in the belief that "reasonable cause" is an issue in establishing a claim of false imprisonment. It is a defense.

No law has been provided and none has been found with reference to false imprisonment in security facilities of the United States. False imprisonment is common in shoplifting. See, Annot. *Construction and Effect, in False Imprisonment Action, of Statute Providing for Detention of Suspected Shoplifters,* 47 A.L.R.3d 998 (1973), where *Stienbaugh* is discussed. Until such time as statutes, rules or regulations are adopted that protect "support contractors" who operate and maintain government owned facilities, "support contractors" must be governed by the common law, or by statutory enactments, that pertain to false imprisonment. In false imprisonment, the detention is purely a matter between private persons for a private end. We cannot say that Lockheed is in effect a public agency of the United States government.

The summary judgment should be reversed.

WOOD, Chief Judge (dissenting).

I agree with Judge Sutin that the only issue is the propriety of the summary judgment in favor of defendants on the false imprisonment claim; the false arrest and kidnapping claims have been abandoned.

I also agree with Judge Sutin that defendants made a prima facie showing that it had reasonable cause to escort the plaintiffs through the clearance procedure as it did and that, in light of that showing, the issue is whether plaintiffs made a showing of a factual question sufficient to defeat summary judgment.

Plaintiffs' claim as to a factual question is limited. They state: "Since the Plaintiffs ... deny that they disrupted work activities on the morning of June 28, 1977, or that they threatened sabotage of the facility, the issue of reasonable cause is in conflict." This contention is based on the statement in *Stienbaugh v. Payless Drug Store, Inc.,* 75 N.M. 118, 401 P.2d 104 (1965): "The denial of the appellees placed the evidence as to probable or reasonable cause in conflict." The opinions of Judges Lopez and Sutin, at least *sub silentio* rely on this statement in *Stienbaugh.*

How does the denial of plaintiffs raise a factual question as to the reasonableness of defendants' belief? A police officer, answering a silent burglar alarm in a closed building and seeing a person emerge from that building, has reasonable grounds to detain that person in connection with a possible burglary. The person's denial of the burglary raises no issue as the the reasonableness of the officer's belief. Similarly, defendants' information about implied threats and disruptive activities by members of plaintiffs' group, information about the harassment of employees who refused to go along with the time card scheme, and the work disruption known to defendants are the facts pertinent to the reasonableness of defendants' belief. The fact that plaintiffs denied that they disrupted work and denied that they threatened sabotage raises no issue as to the reasonableness of defendants' belief. The issue is not whether defendants' belief was true, but whether the belief was reasonable.

The above–quoted statement from *Stienbaugh,* supra, should not be applied literally. Inasmuch as the only claim of plaintiffs as to a factual question is incorrect, I would affirm the summary judgment.